Mary Ethel Brown, Plaintiff-Appellant, v. The South Shore National Bank of Chicago, Defendant-Appellee.

(No. 54833; )

First District—August 20, 1971.

Peter S. Sarelas, of Chicago, for appellant.

Mitchell J. Overgaard and Theodore E. Zahler, both of Chicago, for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

This action was brought by the payee of a check against the bank upon which it was drawn for damages alleged to have arisen from defendant bank's non-payment of the check. On the motion of defendant the court struck a portion of the complaint. Subsequently, after further proceedings, summary judgment was entered for defendant.

Plaintiff's complaint alleged the following: Plaintiff was the holder and owner of a check in the amount of $130 drawn to her order on defendant and signed "John W. or Christine S. Porter by Peter S. Sarelas." Plaintiff endorsed the check and deposited it with her bank, The First National Bank of Chicago, which, in turn presented it to defendant for payment. Defendant paid the check on February 28, 1967, but thereafter, on March 2 returned the check to plaintiff's bank, representing that the check was "Paid in Error" and stamping on the face of the check "Not" and "Paid in Error." A statement attached to the check stated that the signature was not on file. Plaintiff's account in her bank, as a consequence of defendant's acts, was debited in the amount of the check. Defendant had in its possession since February 10, 1966 a general power of attorney executed

by John W. Porter naming Peter S. Sarelas as his attorney. The complaint goes on to allege that the statements of defendant were deliberate, false, fraudulent, libelous and defamatory and published for the purpose of defaming and libeling her valid title and ownership of the check and her name, credit and professional reputation and the statements were made with intent to suggest that plaintiff was issuing a forged check. As a consequence of these acts the plaintiff was wrongfully deprived of the proceeds of the check and interest thereon, required to expend money in the prosecution of her claim, injured in her good name and credit, and suffered from loss of sleep and anguish. Relief in the form of compensatory and exemplary damages was demanded in the amount of $50,000.

Defendant filed a motion asking the court to strike the complaint. That motion asserted several grounds for dismissal including the failure of the complaint to state a cause of action. The court entered an order striking portions of the complaint and concluding that plaintiff had stated a good cause of action for $130 plus interest at 5% thereon from March 2, 1967.

Subsequently, defendant filed a motion for summary judgment. A supporting affidavit executed by defendant's vice-president and cashier stated, *inter alia*, that the check presented to defendant was not accepted in accord with Ill. Rev. Stat. 1967, ch. 26, par. 3—409(1),[1] that the check on its face stated that it was not accepted and that notice of dishonor was given to the First National Bank of Chicago, the collecting bank, which in turn gave notice to plaintiff.

Plaintiff responded to the motion for summary judgment with a verified pleading entitled "Objections, Reply and Counter-affidavits of Plaintiff to Defendant's Motion for Summary Judgment to Dismiss Complaint at Law." This document states the following: The check was paid on February 28, 1967, and this fact is shown on the face of the check. The records of the bank also indicate that the check was paid, posted and charged to the account of John Porter on that date. Defendant's statement of account dated March 1, 1967, shows that after payment of plaintiff's check there was a balance of $4,501.42 remaining in the account. The defendant had in its possession, in addition to the power of attorney executed by John W. Porter, a power of attorney executed by Christine S. Porter, joint tenant of the account, designating Peter S. Sarelas as her attorney-in-fact. The defendant paid earlier checks issued

---

[1] Ill. Rev. Stat. 1965, ch. 26, par. 3—409(1):

Par. 3—409. DRAFT NOT AN ASSIGNMENT.

(1) A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it.

to plaintiff since April 9, 1966 with the exception of the check dated February 2, 1967.

On October 16, 1969, an order granting summary judgment for defendant was entered, "the court being of the opinion that the plaintiff being a mere payee of a check not 'accepted' by the defendant bank, has no rights against it and that no factual issue exists."

On appeal plaintiff argues that summary judgment deprived her of her constitutional right to a jury trial of fact questions. Plaintiff argues that summary judgment should not have been entered for the reason that substantial factual questions were raised by the pleadings. We do not agree.

■ It is clear that in the absence of the certification or acceptance of a check a payee bank has no obligations to a holder to pay a check drawn on it. Ill. Rev. Stat. 1965, ch. 26, par. 3—409(1). It is plaintiff's theory, however, that under the provisions of Chapter 26, Section 4—213(1) the actions of the bank constituted an acceptance of the check. That section states:

"(1) An item is finally paid by a payor bank when the bank has done any of the following, whichever happens first:

(a) paid the item in cash; or

(b) settled for the item without reserving a right to revoke the settlement and without having such right under statute, clearing house rule or agreement; or

(c) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith; or

(d) made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearing house rule or agreement."

■ Plaintiff's complaint incorrectly asserts that the check was finally paid and posted by defendant. She contends the stamping of the check "Not" and "Paid in Error" and an entry on the statement of account of John W. Porter support her position. Section 4—213(c), *supra,* states that a check is finally paid when the bank has completed the process of posting." (Emphasis added.) Ill. Rev. Stat. 1965, ch. 26, par. 4—109 defines "process of posting" as follows:

"The 'process of posting' means the usual procedure followed by a payor bank in determining to pay an item and in recording the payment including one or more of the following or other steps as determined by the bank:

(a) verification of any signature;

(b) ascertaining that sufficient funds are available;

(c) affixing a "paid" or other stamp;

(d) entering a charge or entry to a customer's account;

(e) *correcting or reversing an entry or erroneous action with respect to the item."* (Emphasis added.)

It is clear that the process of posting involves several steps some of which are those specified by plaintiff. The mere fact that some of those steps were taken does not mean that the process was completed. The affixation of the stamps and the entry on the customer's account are but part of the process. Also included is the judgmental step of signature verification and, if necessary, correction or reversal of erroneous action. The act of the defendant in returning the check to plaintiff's bank demonstrated that the posting process was not completed, regardless of the entry on the "statement of account" and the stamps, placed on the check. Because the posting process had not been completed acceptance had not occurred. Thus defendant was not obligated to pay.

Judgment affirmed.

ENGLISH, P. J. and DRUCKER, J., concur.