ANTHONY M. MONTEFUSCO, JR., Plaintiff-Appellee, *v.* CECON CONSTRUCTION COMPANY, Defendant-Appellant.

Third District    No. 78-414

Opinion filed July 11, 1979.—Rehearing denied August 30, 1979.

320

Murvel Pretorius, Jr., of McConnell, Kennedy, Quinn and Johnston, of Peoria, for appellant.

David B. Radley, of Baymiller, Christison and Radley, of Peoria, for appellee.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from a judgment of the Circuit Court of Peoria County, entered after a jury verdict finding in favor of the plaintiff. The plaintiff has filed a cross-appeal on the issue of damages.

During the fall of 1973 Anthony Montefusco contracted with several contractors to build a combined office-warehouse facility on North University Avenue, Peoria, Illinois, in an area commonly known as Pioneer Park. The defendant, Cecon Construction Company (hereinafter known as Cecon), agreed to provide foundation work, footings, and anchors pursuant to a prime contract.

During July 1974, still during construction, Montefusco and Cecon agreed to a change order whereby Cecon agreed to provide materials and manpower to attach 1,200 lineal feet of two-inch by six-inch by 16-foot wood strips to the perimeter of the roof decking. These strips were to be attached to the metal roof decking edges.

Prior to the attachment of the 2 x 6's, Inland Ryerson Company, supplier of the building materials used on the facility, gave Cecon's job supervisor specifications showing how the 2 x 6's were to be attached. Cecon attached the 2 x 6's in a manner which varied from the specifications. This variance was questioned by Montefusco, but Cecon's job supervisor assured Montefusco that the 2 x 6's were adequately secured to the roof.

On January 11, 1975, a portion of the roof blew off. Montefusco's proof showed that 32 man hours of labor were used to weld the metal deck after that incident. Cecon's president testified that more decking could be welded in an hour than could be bolted and that 3,200 square feet of decking could be bolted in 32 hours. A larger amount could be welded. Montefusco followed the specifications provided by Inland Ryerson and he testified that he had more bolts added to secure the roof. Nothing was done to the undamaged portion of the roof.

On May 19, 1975, a portion of the roof which was undamaged in the first incident was damaged by wind. Again there were 32 man hours used to reweld the decking.

Montefusco filed a breach of contract action for the damage to the facility. Trial was held in early May 1978.

There was testimony by Roger Gear of the National Weather Service that the highest wind speed recorded at the Greater Peoria Airport on January 11, 1975, was 32 with highest gusts of 55. On May 19, 1975, the highest speed was 27 with gusts of 47. The readings were taken only at the airport. They indicated a sudden storm. Since wind speeds may vary depending upon whether the recording device is in the path of the storm

or at its edge, a higher or lower wind speed may have occurred in Pioneer Park.

Phillip Borrowman, a registered engineer with experience in structural engineering, testified. He did not personally inspect the building. He said that the 2 x 6's could withstand the wind if applied according to the Inland Ryerson specifications. He used calculations and test results supplied by Inland Ryerson. He performed additional calculations using information from letters and conversations from Inland Ryerson. Borrowman further testified that he made reference to a book published by the American National Standards Institute. This book is widely used and recognized as authoritative among engineers. The purpose of the book is to keep structural engineers informed on wind research and designing for wind resistance. Borrowman admitted that he did not know why the roof failed.

Montefusco offered damage exhibits totalling $90,304.89, with $47,586 as damages for the first incident and $42,718.89 as damages for the second. The jury verdict was $47,060.

Cecon raised three issues on appeal: (1) were certain opinions of Montefusco's expert inadmissible as founded on hearsay; (2) was certain evidence pertaining to a lack of damage to other buildings improperly admitted; (3) did Montefusco offer sufficient evidence in relation to causation to support a verdict.

Cecon first argues that the trial court committed reversible error in allowing Montefusco's expert, Phillip Borrowman, to offer conclusions which were based upon calculations and test results given to him orally by an Inland Ryerson Company employee who did not testify at trial.

Phillip Borrowman was called as an expert witness for the purpose of showing that if a building were constructed according to the specifications provided by the Inland Ryerson Company, it would have withstood the wind load placed on it. He was not called to prove causation.

Borrowman testified that he had based his calculations on information supplied by Inland Ryerson Company and also on his own experience and on information supplied by the American National Standards Institute.

Expert testimony is often based, at least in part, upon hearsay evidence. It is presumed that the expert because of his special knowledge is able to judge the reliability of the information on which he bases his opinion. (*United States v. Williams* (5th Cir. 1971), 447 F.2d 1285, *cert. denied* (1972), 405 U.S. 954, 31 L. Ed. 2d 231, 92 S. Ct. 1168; *People v. Ward* (1975), 61 Ill. 2d 559, 338 N.E.2d 171.) If the hearsay evidence upon which the expert's opinion is based is that customarily relied upon by

experts in the field, the opinion is admissible. *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, *cert. denied* (1966), 383 U.S. 946, 16 L. Ed. 2d 209, 86 S. Ct. 1204. ■■■ In the instant case Borrowman, in making his calculations, referred to a work considered authoritative by structural engineers and used his personal experience as well. While he admitted that if the Inland Ryerson Company calculations were incorrect, his calculations would also be incorrect, we believe that his expert knowledge in the area qualifies him to determine whether he was relying on incorrect data. If an expert witness bases his opinion on several factors, even though all those factors may not themselves be admissible as evidence, his opinion is admissible when also based upon his personal experience and factors customarily relied upon by experts in the field. (*Darling v. Charleston Community Memorial Hospital*; *United States v. Williams*; *People v. Ward*; *Lawson v. G. D. Searle & Co.* (1976), 64 Ill. 2d 543, 356 N.E.2d 779.) It does not matter if those factors were supplied to him before or during the trial. *People v. Ward*; *Lawson v. G. D. Searle & Co.*

It must be clearly remembered that opposing counsel may extensively cross-examine the expert witness regarding all the factors upon which he relied in forming his opinion. Expert testimony is not definitive; it is merely one more piece of evidence which is used to prove a claim. The weight to be given that evidence may be challenged as it was in the instant case when Cecon's counsel elicited an admission from Borrowman that if the calculations and conclusions from Inland Ryerson Company were incorrect, then an opinion based upon those calculations and conclusions would also be incorrect.

Next, Cecon argues that Montefusco's evidence as to lack of damage to other buildings in the general area was improper and prejudicial. Montefusco testified that other buildings in the Pioneer Park area were not damaged by the wind. Cecon objected that there was no evidence that other buildings in the area were similarly constructed.

■■ We do not believe that any such evidence is required. We believe that the issue in this case is not merely whether the 2 x 6's were improperly attached to the roof decking, but whether they were so improperly attached that they could not withstand the wind pressure, therefore proof of the wind speed was necessary. Roger Gear testified regarding wind speed at the Greater Peoria Airport which is located six or seven miles from Pioneer Park. In addition, we must know how the wind affected buildings six or seven miles from the airport recording equipment. This is done by testimony of observations made regarding any wind damage at and surrounding the location in question. *Jay Bee Warehouse Co. v. American Eagle Fire Insurance Co.* (7th Cir. 1959), 270 F.2d 883;

*Friedman v. Employers' Fire Insurance Co.* (1948), 336 Ill. App. 140, 83 N.E.2d 40.

Lastly, Cecon argues that Montefusco did not offer sufficient evidence of causation to support a verdict in his favor. Cecon has admitted that there was sufficient proof of breach of contract.

In examining the testimony of Borrowman and Gear, we find that if the 2 x 6's were properly attached to the roof decking they could withstand winds of 40 to 50 miles per hour with gusts of 70 to 80 miles per hour, and that the winds on January 11, 1975, apparently did not exceed 32 miles per hour and on May 19, 1975, did not exceed 27 miles per hour. It was the testimony of Borrowman that the 2 x 6's as attached by Cecon would withstand a wind speed of 20 miles per hour. We believe that this was sufficient evidence upon which the jury could base a conclusion that the faulty attachment of the 2 x 6's by Cecon allowed the wind to damage the facility.

Montefusco filed a cross-appeal on the issue of damages. Cecon contended that Montefusco had a duty to mitigate his damages by rebolting the entire roof and not merely that portion which was damaged by the wind. Both Montefusco and Cecon agree that a plaintiff may not stand idly by and allow his property to be destroyed and thereby increase the damages owed him by the defendant. (*Cedar Rapids & Iowa City Ry. & Light Co. v. Sprague Electric Co.* (1917), 280 Ill. 386, 117 N.E. 461; *Chicago & Alton Ry. Co. v. Buck* (1884), 14 Ill. App. 394; *Dobbins v. Duquid* (1872), 65 Ill. 464; *Toledo, Peoria & Warsaw Ry. Co. v. Pindar* (1870), 53 Ill. 447; *Scherrer v. Baltzer* (1899), 84 Ill. App. 126; *Salaban v. East St. Louis & Interurban Water Co.* (1936), 284 Ill. App. 358, 1 N.E.2d 731; *Kankakee & Southwestern R.R. Co. v. Fitzgerald* (1885), 17 Ill. App. 525.) We agree that this is a correct statement of the law in Illinois. A plaintiff who fails in his duty to mitigate his damages must suffer the loss.

However, a close examination of those cases will show that before a plaintiff can be charged with a duty to mitigate damages, it must be shown that he knew he would be damaged. In the instant case, it is true that Montefusco had only the damaged portion of his roof repaired and reinforced. It must be remembered, however, that Montefusco had been assured by Cecon's job supervisor that the roof was secure. He also sought assistance from Cecon's president, who refused to help him in determining how to avoid further damage to the roof. Since half of the roof survived the first windstorm and later was damaged by winds of apparently lesser speed than those which damaged the first half of the roof, we fail to see how Montefusco could be deemed well enough aware of the faulty construction by Cecon to be charged with the duty to mitigate the damages owed by Cecon.

Montefusco complains that the affirmative defense of mitigation of damages was unduly emphasized in the instructions. The following instructions were given:

"The defendant sets up the further affirmative defense that after the January 1975 wind damage the plaintiff failed to exercise ordinary care to prevent further damage.

\* \* \*

If you find from your consideration of all of the evidence that the second affirmative defense above set forth has been proved, then you should mitigate the amount of damages you may find suffered by the plaintiff to the extent proved."

"The defendant sets up the further affirmative defense that after the January 1975 wind damage the plaintiff failed to exercise ordinary care to prevent further damage, which plaintiff denies."

"In fixing the amount of money which will reasonably and fairly compensate the plaintiff, you are to consider that a person whose property is damaged must exercise ordinary care to prevent further damage. If any loss results from a failure to exercise such care, damages cannot be recovered for such loss."

■■ Jury instructions should not unduly emphasize any particular matter. (*Ryan v. Monson* (1961), 33 Ill. App. 2d 406, 179 N.E.2d 449.) Neither should instructions be repetitious. (*Endurance Paving Co. v. Pappas* (1969), 117 Ill. App. 2d 81, 253 N.E.2d 895.) The first two instructions were prepared by the trial court and the third submitted by the defendant. We find them repetitious and giving undue emphasis to the affirmative defense.

Since we view the issues of liability and damages as clearly separable in the instant case, we believe that Montefusco is entitled to a new trial on the issue of damages.

We therefore order that this cause be remanded to the trial court for new trial on the issue of damages which resulted from the wind damage on May 19, 1975. The judgment of the Circuit Court of Peoria County is hereby affirmed on all other issues.

Judgment affirmed with remand for purpose of a new trial on issue of damages.

STENGEL and BARRY, JJ., concur.