NANCY'S HOME OF THE STUFFED PIZZA, INC., Plaintiff-Appellee, v. BIAGIO CIRRINCIONE *et al.*, Defendants-Appellants.

First District (5th Division)   No. 83—2927

Opinion filed June 6, 1986.

Andrew Flando, Jr., of Highland Park, for appellants.

Richard E. Steck, of Steck & Schofield, P.C., of Chicago, for appellee.

JUSTICE PINCHAM delivered the opinion of the court:

Defendants, Biagio Cirrincione and Giuseppina Cirrincione (the Cirrinciones), appeal from a $25,000 judgment against them. The judgment also granted plaintiff, Nancy's Home of the Stuffed Pizza, Inc., successor in interest to Rocco Palese and Nancy Palese, and Nancy's Restaurant and Lounge, Inc. (Nancy's), other hereinafter mentioned relief.

Nancy's' claims against the Cirrinciones allegedly arose out of two agreements between them. One agreement was dated August 11, 1977, and involved a pizza business at 4250 North Central Avenue in Chicago. The other agreement was dated November 20, 1977, and involved a pizza business at 7309 West Lawrence Avenue in Chicago. Count I of Nancy's two-count complaint against the Cirrinciones alleged that on or about August 11, 1979, Nancy's and the Cirrinciones entered into an agreement in which the Cirrinciones purchased from Nancy's the right to use the trademark and trade name, "Nancy's Home of the Stuffed Pizza," for use at 4250 North Central Avenue in Chicago. In the agreement, the Cirrinciones also purchased from Nancy's, Nancy's' "secret formula for stuffed pizza." Count I further alleged that the Cirrinciones violated the agreement (1) by claiming to be the originators and inventors of "stuffed pizza"; (2) by selling stuffed pizza which was not prepared in accordance with Nancy's' recipe; (3) by using Nancy's' trademark and trade name, "Nancy's Home of the Stuffed Pizza" in manners unauthorized by the agreement; and (4) by failing to display large photographs of Nancy and Rocco Palese at the 4250 North Central Avenue business. It was alleged in count I that Nancy's served notice on the Cirrinciones on July 16, 1982, of Nancy's' intent to terminate the agreement unless the violations were discontinued and corrected. Nancy's claimed that because the violations continued, on

August 31, 1982, Nancy's served written notice on the Cirrinciones termination of the agreement. Finally, count I alleged that despite the termination notice, the Cirrinciones continued in the operation of the business and the complained of violations. Count I prayed (1) that the court declare that the agreement was validly terminated; (2) for a $1 million judgment against the Cirrinciones for trademark and trade name violations; and (3) for $250 damages per day for the Cirrinciones continued violations of the agreement.

The allegations of count II were substantially the same as the allegations of count I, except in count II the pizza business was alleged to have been located at 7309 West Lawrence Avenue in Chicago, and the date of the agreement was November 20, 1977.

Following a trial by the court, the court found (1) that the agreements were valid and binding; (2) that the Cirrinciones violated the agreements by selling stuffed pizza which was not prepared in accordance with the recipe provided in the agreement, and by using the "Nancy's Home of the Stuffed Pizza" trade name and trademark on signs, menus, advertisements and other literature in ways which were not approved by Nancy's; and (3) that the Cirrinciones failed to display photographs of Nancy and Rocco Palese at the 4250 North Central Avenue business, as required by that agreement. The court found further that the Cirrinciones had not violated the agreement by claiming to be the originators and inventors of "stuffed pizza," and that the $250 per day liquidated damages for violations of the agreements was excessive and constituted a penalty. Finally, the trial court found that the agreements had been properly terminated by Nancy's. The court entered judgment against the Cirrinciones and in favor of Nancy's in the amount of $25,000, computed as follows: $10,000 for violation of the August 11, 1977-4250 North Central Avenue agreement; $2,500 for infringement of the trademark and trade name "Nancy's Home of the Stuffed Pizza" at the 4250 North Central Avenue address for unauthorized use after termination of that agreement; $10,000 for violation of the November 20, 1977-7309 West Lawrence Avenue agreement; and $2,500 for infringement of the "Nancy's Home of the Stuffed Pizza" trademark and trade name for unauthorized use after termination of that agreement.

On this appeal, the Cirrinciones contend: (1) that the trial court erred in finding that Nancy's furnished the Cirrinciones a recipe for stuffed pizza, and in further finding that the Cirrinciones failed to follow the recipe required by the agreement; (2) that the trial court's finding that the Cirrinciones failed to display photographs of Rocco and Nancy Palese in accordance with the August 11, 1977-4250 North Central Avenue agreement was against the manifest weight of the evi-

dence; (3) that Nancy's causes of action were barred by *laches*; (4) that Nancy's failure to mitigate damages and the $25,000 damages against the Cirrinciones constitute a penalty; and (5) that entry of the declaratory judgment was inappropriate.

■ The Cirrinciones first contend that the trial court erred in finding that Nancy's furnished the Cirrinciones a recipe for stuffed pizza, and that the court therefore erred when it found that the Cirrinciones sold stuffed pizza which was not prepared in accordance with the furnished recipe. There are sufficient facts in the record which support the findings by the trial court. It is within the province of the trial court to weigh the evidence and to make findings of fact. Unless the findings are manifestly against the weight of the evidence, a reviewing court will not disturb those findings. (*Central Steel & Wire Co. v. Coating Research Corp.* (1977), 53 Ill. App. 3d 943, 947, 396 N.E.2d 140.) A court of review will defer to the findings of a trial court unless those findings are against the manifest weight of the evidence. *People v. Cheek* (1982), 93 Ill. 2d 82, 94, 442 N.E.2d 877.

There was trial testimony that a stuffed pizza recipe was furnished to the Cirrinciones by Nancy's and that the Cirrinciones sold stuffed pizza which was not prepared in accordance with that recipe, in violation of the agreements. The agreements provided that "for the protection of the trademark and trade name and in order that the patrons of the restaurant will not be misled, all stuffed pizza shall be made and prepared in accordance with the recipes and formulas furnished by seller-licensor [Nancy's]." Marisa Palese, daughter, of plaintiffs Rocco and Nancy Palese and president of the plaintiff corporation, testified that although there was no written stuffed pizza recipe, Rocco and Nancy Palese twice told the Cirrinciones the recipe for "stuffed pizza." This testimony of Marisa Palese was corroborated by the defendant, Biagio Cirrincione, who was called as an adverse witness by Nancy's.

During his testimony, Biagio Cirrincione repeatedly stated that he was given a recipe by Nancy's. He acknowledged his receipt of a recipe from Nancy's and inferentially admitted his violation of the requirement to use that recipe when he was asked if he ever used a recipe supplied by Nancy's, and he responded, "Some I did use, and some not, because I [was] also using my own." It is apparent that Cirrincione could not have used Nancy's "stuffed pizza" recipe, which he acknowledged he used, if no such recipe had been provided him.

At trial, Cirrincione was further interrogated on the testimony he gave in another proceeding, in which he admitted that the Paleses had given him a recipe for stuffed pizza. This trial interrogation was as follows:

"Q. Weren't you asked the following question and didn't you give the following answer in that proceeding, 'Q. And you acknowledged that after the signing of the contract the Paleses did give you a recipe or recipes, the strictest of secrecy to prepare the famous Nancy's stuffed pizza, is that correct? A. yes.'

A. Yes, but I would—but I was making pizzas before."

When asked by his own attorney if he was given a written recipe, Biagio Cirrincione responded, "No nothing secret, just word of mouth." The trial court concluded and found that a recipe had been provided to the Cirrinciones by Nancy's. The evidence was sufficient to support the trial court's finding and will not be reversed by this court.

■ The Cirrinciones next contend that the trial court's findings that the Cirrinciones failed to display Rocco and Nancy Paleses' photographs at the 4250 North Central Avenue business in accordance with the agreement was against the manifest weight of the evidence. The agreement provided that "buyer agrees to maintain the enlarged photographs of Nancy and Rocco Palese in the front lobby and in the pickup area, and to replace same as it becomes defaced or damaged." The uncontroverted testimony at trial was that there were enlarged photographs of Nancy and Rocco Palese on the walls at the front and rear of the Central Avenue business when the Cirrinciones took over its operation. There was testimony that an employee of Nancy's removed the photographs from the walls when the Cirrinciones moved in, but that he returned them to their places on the wall within a half hour after he removed them. The photographs were not on the walls in August 1982. In fact, defendant, Biagio Cirrincione, testified that the pictures were taken down and he never saw them thereafter. The trial court concluded that the photographs were not displayed as required by the agreement. This finding is supported by the evidence and therefore will not be disturbed by this court.

■ The Cirrinciones next contend that the trial court's finding that the Central Avenue agreement required Nancy's prior approval of the Cirrinciones use of the "Nancy's Home of the Stuffed Pizza" trademark and trade name is "contrary to law." The Cirrinciones cite no authority to support this contention. They are required not only to present argument on this contention, but also to support that argument with citation of authority. (*Wilson v. Continental Body Corp.* (1981), 93 Ill. App. 3d 966, 969, 418 N.E.2d 56.) Failure to cite authority has been held to constitute waiver of the issue on review. (*Saldana v. Wirtz Cartage Co.* (1978), 74 Ill. 2d 379, 386, 385 N.E.2d 664.) Because the Cirrinciones have failed to cite authority to support their argument, we deem that argument waived, and the trial court's findings on this issue stands.

■ The Cirrinciones next urge that the trial court's findings that they used the trademark and trade name of "Nancy's Home of the Stuffed Pizza" in unauthorized manners at both establishments are against the manifest weight of the evidence. The trial court found that "the defendant used the trademark and trade name 'Nancy's Home of the Stuffed Pizza' in manners not specifically approved by the plaintiff, including, but not limited to the use of unapproved signs, menus, advertisements and other literature."

The agreements required the buyer-licensee [the Cirrinciones] to prominently use and display approved signs, menus, advertisements and other literature which display the trademark "Nancy's Home of the Stuffed Pizza." The agreements also provided that the Cirrinciones obtain Nancy's approval of signs, menus, advertisements and other literature which displayed the trademark "Nancy's Home of the Stuffed Pizza."

Testimony at trial established that the Cirrinciones printed and used different menus which were not approved by Nancy's and used the trademark and trade name in unapproved ways. The defendant, Biagio Cirrincione, testified that he changed the name of the business, which was done without the plaintiff's approval. Menus, signs and advertisements were changed to correspond to the new name. Two different menus were introduced into evidence. Marisa Palese testified that one of the menus was used when the Central Avenue business was under Nancy's control and operation, and that the other menu was used by the Cirrinciones. The Cirrinciones never sought nor obtained Nancy's approval of the new menu. Thomas Cirrincione testified that a menu different from the original Nancy's menu was used and that the original Nancy's menu was never used as far as he knew. The trial evidence supported the trial court's finding that unauthorized menus had been used which were not approved by Nancy's. We will not disturb that finding.

■ The Cirrinciones next contend that Nancy's action "should be barred by *laches*," and that *laches* may be raised as an affirmative defense in an action for declaratory relief. *Laches* is an equitable principle which bars an action where, because of delay in bringing suit, a party has been misled, or prejudiced, or has taken a course of action different from what he otherwise would have taken. (*Hippert v. O'Grady* (1981), 97 Ill. App. 3d 310, 312, 423 N.E.2d 228.) The doctrine of *laches* is predicated on the principle that courts are reluctant to come to the aid of a party who has knowingly withheld assertion of a right, where, in the exercise of due diligence he should have earlier asserted that right. Lack of diligence must result in some inequity to the adverse party such

that it would be unfair and unjust to allow the belated assertion of the claim. *Schroeder v. Schleuter* (1980), 85 Ill. App. 3d 574, 576, 407 N.E.2d 204.

Whether the defense of *laches* is available is to be determined upon the facts and circumstances of each case. (*Admiral Builders Corp. v. Robert Hall Village* (1981), 101 Ill. App. 3d 132, 139, 427 N.E.2d 1032.) Mere delay in asserting a right does not constitute *laches*. (*Higgins v. Brunswick Corp.* (1979), 76 Ill. App. 3d 273, 279, 395 N.E.2d 81.) A defendant must show prejudice or hardship rather than mere passage of time, and must demonstrate that the delay induced him to adversely change position for the defense of *laches* to apply. If the defendant is not injured by the delay, *laches* is inapplicable. (*Fruhling v. County of Champaign* (1981), 95 Ill. App. 3d 409, 416, 420 N.E.2d 1066; *Biggs v. Health & Hospitals Governing Com.* (1977), 55 Ill. App. 3d 501, 507, 370 N.E.2d 1150.) Before a party can rely on the doctrine of *laches*, he must plead and prove not only unreasonable delay, but he must also prove prejudice resulting therefrom. (*Conway v. Conners* (1981), 101 Ill. App. 3d 121, 129, 427 N.E.2d 1015.) Here, the Cirrinciones failed to plead or prove how Nancy's' delay in filing the action prejudiced them or adversely affected their position. No such argument was presented in the pleadings and no such proof was offered at trial. The Cirrinciones will not be allowed to rely on *laches* for the first time on this appeal.

The Cirrinciones next argue that Nancy's failed to mitigate damages, and urge that the law imposes upon Nancy's the duty to make a reasonable effort to render the injury as minimal as possible. If by negligence or wilfulness an injured party allows damages to be unnecessarily enhanced, the increased loss falls upon the injured party. (*Culligan Rock River Water Conditioning Co. v. Gearhart* (1982), 111 Ill. App. 3d 254, 258, 443 N.E.2d 1065.) A party being damaged cannot stand idly by and allow the injury to continue and increase without making reasonable efforts to avoid further loss. (*Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 929, 419 N.E.2d 578.) However, failure to mitigate damages is an affirmative defense and must be pleaded and proved. (*Toushin v. Gonsky* (1979), 77 Ill. App. 3d 508, 517, 395 N.E.2d 1124.) A party who does not plead his opponent's failure to mitigate damages is not entitled to complain of such failure. The Cirrinciones did not raise Nancy's' failure to mitigate damages as an affirmative defense below, but raise it for the first time before this court on appeal. Again, the Cirrinciones will not be allowed to rely on a belated defense for the first time on appeal.

The Cirrinciones next contend that the judgment of $25,000 was excessive and constitutes penalty. The test of whether a

judgment is excessive is whether the total amount falls within the necessarily flexible limits of fair and reasonable compensation or is so large as to shock the judicial conscience. (*King v. City of Chicago* (1978), 66 Ill. App. 3d 356, 359, 384 N.E.2d 22.) Fixing the amount of damages is preeminently the function of the trier of fact and once that amount is so fixed it should not be disturbed on appeal, unless it is obviously the result of passion and prejudice.

Here, the trial court found that the Cirranciones were guilty of three violations of each of the two agreements. Each violation was in direct contravention to the letter and spirit of the agreements. The terms of the agreements were clearly drafted to protect Nancy's' trademark, trade name and Nancy's' business reputation and integrity. The violations harmed Nancy's' business reputation and integrity. It was fair and reasonable for the trial court, as the trier of fact, to assess damages as it did. There is no evidence of passion and prejudice apparent from the record. This court will not disturb the judgment of the lower court.

Finally, the Cirranciones contend that declaratory relief was inappropriate. Declaratory relief requires a plaintiff with a legal tangible interest, a defendant with an opposing interest, and an actual controversy between the parties concerning such interest. (*Kerr Steamship Co. v. Chicago Title & Trust Co.* (1983), 120 Ill. App. 3d 998, 1003, 458 N.E.2d 1009.) An "actual controversy" is a dispute admitting of an immediate and definitive determination of the parties' rights. (*Kaske v. City of Rockford* (1983), 96 Ill. 2d 298, 306, 450 N.E.2d 314, *cert. denied* (1983), 464 U.S. 960, 78 L. Ed. 2d 391, 104 S. Ct. 391.) Here, one of the actual controversies was whether Nancy's termination of the agreements was valid. Nancy's complaint for declaratory relief requested that the trial court declare the rights and liabilities of the parties and find that the agreements were validly terminated. The determination of the validity of the termination of the agreements required an immediate and definitive determination so that the remainder of the rights of the parties under the agreement could be resolved. The court's granting of declaratory relief was proper. We therefore affirm this ruling of the trial court.

The judgment of the trial court is affirmed.

Affirmed.

SULLIVAN, P.J., and LORENZ, J., concur.