MERRILL LYNCH, PIERCE, FENNER AND SMITH, INC., a corporation, Plaintiff,

v.

DEVON BANK, an Illinois banking corporation, Defendant,

and

DEVON BANK, an Illinois banking corporation, Third-Party Plaintiff,

v.

CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, a national banking association, and Crocker National Bank, a national banking association, Third-Party Defendants.

No. 83 C 2422.

United States District Court, N.D. Illinois, E.D.

Feb. 23, 1987.

Peter A. Cantwell, Andrew V. DePaul, Stephen E. Smith, Cantwell, Smith & Van Daele, Chicago, Ill., for plaintiff.

Marc O. Beem, Michael L. Shakman, Krupp & Miller, Arthur W. Friedman, Chicago, Ill., for defendant.

Micheal J. Sweeney, Robert D. McLean, Joshua J. Mintz, Sidney & Austin, Chicago, Ill., for Crocker Nat. Bank.

Richard H. Ferri, Paul K. Vickrey, Chicago, Ill., for Continental Illinois Nat. Bank & Trust Co.

## MEMORANDUM

LEIGHTON, Senior District Judge.

In this diversity action, the plaintiff, Merrill Lynch, Pierce, Fenner and Smith, Inc., brings suit to recover from defendant, Devon Bank, for its alleged wrongful dishonor of a check. The cause is before the court on Devon's motion for summary judgment. For the following reasons, it appearing that there is no material issue of fact to be resolved and that Devon is entitled to judgment as a matter of law, the motion is granted.

### I

On July 26, 1979, Merrill Lynch received a check payable to its order from Manus, Inc. for $647,250.00; it was drawn on Manus' account with Devon in Chicago, Illinois. The next day in Chicago, Manus deposited into its account at Devon a check payable to itself in the identical sum drawn on a Boston, Massachusetts bank by Cash Reserve Management, Inc., a Manus subsidiary. Merrill Lynch deposited the check it had received from Manus in its account at the Crocker National Bank in Los Angeles, California; and it was placed into the federal reserve banking system for collection. The check was presented to Devon for payment at approximately 9:30 a.m. on Wednesday, August 1, 1979.

Wednesday is not a regular business day at Devon. Although its walk-up and drive-up teller windows are open until 5:00 p.m. on that day of each week, the bank's lobby is closed on that day. Customers are not served on that day in the service, loan, accounts, and trust departments. The safe deposit box vault is closed to the public on Wednesdays; and no one can call the bank after 1:00 p.m. because its switchboard is closed after that hour.

On Friday, August 3, 1979, at 4:10 p.m., Devon was informed by Continental Illinois National Bank in Chicago that the Cash Reserve Management check was being returned for insufficient funds. As a result, Manus' account at Devon had insufficient funds to pay the Merrill Lynch check. Accordingly, at 4:22 p.m. on August 3, 1979, Devon gave notice it was dishonoring the check it had received on August 1, and returned it to Crocker. The check was received by Crocker on or about August 10; but Crocker attempted to put it through for payment a second time. It was received by Devon again on August 13, dishonored and returned on August 14, 1979. On or about August 28, Manus was placed in receivership and enjoined from paying Merrill Lynch, or any of its other creditors. This ten-count amended complaint in its pertinent part alleges that the first dishonor of the Merrill Lynch check was untimely; and

that Devon was liable to Merrill Lynch for the full amount of the check, plus interest from July 16, 1979.

Devon, in support of its motion for summary judgment, argues that Wednesday, August 1, 1979, the day it received the Merrill Lynch check, was not "a banking day" for its business because it was not a day during which it was "open to the public for carrying on substantially all of its banking functions." Therefore, it had until midnight of its next banking day to have dishonored the check, which it did. For these reasons, Devon contends that as a matter of law it timely dishonored the check received on August 1, 1979; and, as a consequence, its motion for summary judgment should be granted because Merrill Lynch is not entitled to any relief in this case.

## II

■ Devon's motion for summary judgment can be granted only if it is established that there are no genuine issues of material fact, and that it is entitled to judgment as a matter of law. Rule 56, Fed.R. Civ.P. To prevail on a motion for summary judgment, the moving party has the burden of establishing that there is no genuine issue of material fact. *Korf v. Ball State University*, 726 F.2d 1222 (7th Cir.1984). Any inference to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Hermes v. Hein*, 742 F.2d 350 (7th Cir. 1984). The existence of a factual dispute, however, only precludes summary judgment if the disputed fact is outcome-determinative. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *Korf*, 726 F.2d at 1226, quoting *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1306 (9th Cir.1982).

## III

Section 4–301(1) of the Illinois Commercial Code, Ill.Rev.Stat., ch. 26, ¶ 4–301(1) (1985), provides that a payor bank [Devon] is not accountable for any loss on a check submitted to it for payment if it has not yet made final payment and if before the midnight deadline it returns the item or sends written notice of dishonor. *Go-Tane Service Stations, Inc. v. Sharp*, 78 Ill.App.3d 785, 788, 33 Ill.Dec. 916, 918, 397 N.E.2d 249, 251 (2d Dist.1979). Therefore, in order for Devon's motion to be granted, it must show as a matter of law that: (1) the midnight deadline was met; and (2) no final payment was made.

■ Section 4–104(1)(h) states that "midnight deadline"

with respect to a bank is midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later. Ill.Rev.Stat., ch. 26, ¶ 4–104(1)(h) (1985).

A "banking day" is defined as:

that part of any day on which a bank is *open to the public* for carrying on substantially all of its banking functions. Ill.Rev.Stat., ch. 26, ¶ 4–104(1)(c) (1985) [emphasis added].

Devon received the Merrill Lynch check on Wednesday, August 1. If this was one of its "banking days" then Devon's midnight deadline for return of the check would have been midnight, August 2, the "next banking day following the banking day on which it receive[d]" the check. Devon points out, however, that Wednesday was not a banking day for it because it was not open to the public for carrying on substantially all of its banking functions. Thus, Devon contends that because Wednesdays are not banking days in its business, the banking day it first received the check was Thursday, August 2; consequently, it had until midnight August 3 to dishonor the check. Merrill Lynch, on the other hand, contends that Wednesday was a banking day for Devon, and the deadline to dishonor the check was therefore midnight on Thursday, August 2, 1979.

What constitutes a "banking day" is clearly and unambiguously defined in § 4–104(1)(c). A banking day is where a bank is "open to the public for carrying on substantially all of its banking functions." It is clear from the record that Devon was not "open to the public" on Wednesday, August 1. Numerous factors point to this: the bank's lobby was closed on that day;[1] customers were denied all the services of the loan department and accounts department, as well as the trust department; the customer service department and safe deposit box vault were also closed to the public. In addition, the public could not contact the bank after 1:00 p.m., as the switchboard was closed after that time. Therefore, while the bank was open to bank personnel, it is evident that it was closed to the public. Merrill Lynch argues that because the walk-up and drive-up windows were open, the bank was open to the public. However, customers could only perform a few selected types of transactions at these windows. They are usually limited to depositing and withdrawing money from existing accounts. This limitation evidences that the bank was not open for all of its banking functions. Accordingly, since Wednesday, August 1, 1979, was not a banking day, Devon had until midnight, August 3, to dishonor the check. The check was, in fact, dishonored at 4:22 p.m. on August 3, 1979; before the midnight deadline.

■ The issue regarding final payment remains. If, as a matter of law, Devon did not make final payment, its motion for summary judgment must be granted. *See* Ill.Rev.Stat. ch. 26, ¶ 4–301(1)(1985); *Go-Tane Service Stations,* 78 Ill.App.3d at 788, 33 Ill.Dec. at 918, 397 N.E.2d at 251. Final payment of an item by a payor bank occurs when the bank has:

(a) paid the item in cash; or

(b) settled the item without reserving a right to revoke the settlement and without having such right under statute, clearinghouse rule or agreement; or

(c) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith; or

(d) made a provisional settlement for the item and failed to revoke the settlement in the time and manner permitted by statute, clearinghouse rule or agreement.

Section 4–213(1), Illinois Commercial Code, Ill.Rev.Stat. ch. 26, ¶ 4–213(1) (1985).

Merrill Lynch argues that final payment was made under this section, relying primarily on the "completed process of posting," subsection (c) of § 4–213(1). It contends Devon completed the process of posting after it verified signatures on the check, debited the proper account, affixed paid stamps, and corrected or reversed erroneous entries made on return of items. Devon, however, argues that final payment was not made, relying primarily upon § 4–109 of the Illinois Commercial Code, Ill.Rev.Stat., ch. 26, ¶ 4–109 (1985), which defines the "process of posting" as:

The "process of posting" means the usual procedure followed by a payor bank in determining to pay an item and in recording the payment, including one or more of the following or other steps as determined by the bank:

(a) verification of any signature;

(b) ascertaining that sufficient funds are available;

(c) affixing a "paid" or other stamp;

(d) entering a charge or entry to a customer's account;

(e) correcting or reversing an entry or erroneous action with respect to the item.

Devon contends that the process of posting was not completed, relying specifically on § 4–109(e), which allows for the "correcting or reversing of an entry" before posting is considered fully completed.

It is clear the process of posting involves completion of several steps, one of which is the "correcting of erroneous actions." That some of the steps listed in § 4–109 were taken does not mean the process was

---

1. Devon's walk-up and drive-up teller windows were open until 5:00 p.m. on August 1, 1979.

completed. *See Brown v. South Shore National Bank*, 1 Ill.App.3d 136, 273 N.E.2d 671 (1st Dist.1971). Merrill Lynch contends the "correcting of erroneous actions" was finished thus posting completed after Devon personnel made the necessary correcting of entries and reversing of payments made in error during computer processing.

"Correcting an erroneous action" in *Brown* was found to include allowing a drawee bank to correct an error even after the drawee bank had completed processing and paid on the check. The court reasoned that according to § 4–213(1)(c), a check is finally paid when the bank has "completed the process of posting"; and that under § 4–109, the process of posting involves several steps, only some of which had been accomplished. The court emphasized that § 4–109(e) referred to "correcting or reversing an entry or erroneous action with respect to the item"; and that the affixation of stamps and the entry on the customer's account were but part of the process. Also included was the judgmental step of signature verification and, if necessary, correction or reversal of erroneous action. *Brown*, 1 Ill.App.3d at 139, 273 N.E.2d at 673.

Here, as in *Brown*, the "correcting an entry or erroneous action" which is provided by § 4–109(e) allowed Devon, after learning that the Manus account had insufficient funds, to correct the entry which erroneously indicated that the funds were sufficient. In this regard, Devon's returning the check to Crocker demonstrated that the posting process was not completed, regardless of the entry on the statement of account and the stamps, placed on the check. *Brown*, 1 Ill.App.3d at 139, 273 N.E.2d at 673. Accordingly, final payment was not made by Devon because the posting process was not completed until it was allowed to correct the erroneous entry. Ill. Rev.Stat. ch. 26, ¶ 4–213(1) (1985).

In summary, since final payment was not made, and because Devon met its midnight deadline by making a timely dishonor of the check on August 3, 1979, at 4:22 p.m., it is not liable on the check. Ill.Rev.Stat. ch. 26, ¶ 4–301(1) (1985). It is for these rea-sons that Devon's motion for summary judgment is granted, and judgment will be entered in its favor. An appropriate order may be proposed by the parties with regard to the remaining issues in this case.

On the Motion for Reconsideration

■ In its simplest terms, this case presents one issue—did the defendant bank dishonor the check in question before its midnight deadline and before making final payment. If it did, the bank is entitled to judgment. Ill.Rev.Stat. ch. 26, ¶ 4–301(1) (1985). On April 11, 1986, the court issued a memorandum opinion and accompanying order concluding that both these requirements were satisfied and that no question of material fact existed; it accordingly entered judgment for defendant. Plaintiff moves for reconsideration; its motion is limited to the issue of final payment.

A payor bank makes final payment if, among other things, it completes the process of posting or makes a provisional settlement and fails to revoke in time and manner permitted by statute, clearing house rule or agreement. Ill.Rev.Stat. ch. 26, ¶ 4–213(1)(c)(d) (1985). The court concluded in its April 11, 1986 memorandum that the process of posting was not completed; therefore, final payment was not made in that manner. For the reasons stated in that memorandum, the court adheres to its original ruling on this issue.

With regard to the timely revocation of the provisional settlement, plaintiff argues that because defendant did not revoke settlement within the time provided by clearing house rules, final payment was made pursuant to § 4–213(1)(d). Plaintiff misconstrues the statute. Under § 4–213(1)(d), if settlement is revoked in a time provided by either statute or clearing house rule, final payment is not made. J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code*, § 16–4 at 622 (2d ed. 1980). In other words, if the time to revoke settlement has lapsed under either clearing house rule or statute, but not under both, the bank has "that additional time to return the item or give notice of dishonor before payment is deemed final...." *Id.* at 622.

In this case, because defendant revoked settlement in a time provided by statute, Ill.Rev.Stat. ch. 26, ¶ 4–301(1) (1985), that is before its midnight deadline, final payment was not made; this is true even assuming that the deadline set out in the clearing house rule was not met. Further, nothing in the clearing house rule cited by plaintiff indicates an intent to override the statute's midnight deadline; the court will not presume such an intent. *See Colorado Nat. Bank v. First Nat. Bank,* 459 F.Supp. 1366, 1372 (W.D.Mich.1978); *Cf. Berman v. United States Nat. Bank,* 197 Neb. 268, 249 N.W.2d 187, 198–99 (1976).

In summary, because the defendant dishonored the check before its midnight deadline and before making final payment, it is entitled to judgment as a matter of law. Accordingly, plaintiff's motion to reconsider is granted and after further consideration, the court adheres to its original ruling granting defendant's motion for summary judgment.

So ordered.