See also, D.C., 702 F.Supp. 652.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., a corporation, Plaintiff,

v.

DEVON BANK, an Illinois banking corporation, Defendant.

DEVON BANK, an Illinois banking corporation, Third–Party Plaintiff,

v.

CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO, a national banking association, and Crocker National Bank, a national banking association, Third–Party Defendants.

No. 83 C 2422.

United States District Court, N.D. Illinois, E.D.

Oct. 24, 1988.

Peter A. Cantwell, Andrew V. DePaul, Stephen E. Smith, Cantwell Smith & Van Daele, Chicago, Ill., for plaintiff.

Marc O. Beem, Michael L. Shakman, Krupp & Miller, Michael J. Sweeney, Robert D. McLean, Joshua J. Mintz, Sidley & Austin, Richard H. Ferri, Paul K. Vickrey, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This diversity action, which centers around a dishonored check, comes before the District Court for a second time. In a

previous opinion, District Judge George N. Leighton, since retired, granted the motion of defendant Devon Bank ("Devon") for summary judgment against the plaintiff Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"). 654 F.Supp. 506 (N.D. Ill.1987). The United States Court of Appeals for the Seventh Circuit subsequently reversed and returned the matter to this Court. 832 F.2d 1005 (7th Cir.1987). Devon now brings a second motion for summary judgment based on different grounds than the first. For the reasons described below, we deny Devon's motion.[1]

## Factual Background

On July 26, 1979, Merrill Lynch received a $647,250 check payable to its order from Manus, Inc. ("Manus"), one of its customers. This check was drawn on Manus' account with Devon in Chicago and will be referred to as the Manus check. The next day, Manus deposited a check in an identical amount in its account at Devon. This second check was payable to Manus and drawn on a Boston bank by Cash Reserve Management, Inc., a Manus subsidiary; it will be referred to as the Cash Reserve check. Merrill Lynch deposited the Manus check in its account with Crocker in Los Angeles, and Crocker placed the check into the Federal Reserve banking system for collection. The check was presented to Devon for payment on the morning of Wednesday, August 1, 1979.

On Thursday, August 2, Devon verified the signature on the Manus check and, apparently after stamping "paid" on it, placed the check in the file for Manus' account. On Friday, August 3, at 4:10 p.m., Continental informed Devon that the Cash Reserve check was being returned for insufficient funds. As a result, Manus' account at Devon had insufficient funds to pay the Manus check to Merrill Lynch. Accordingly, at 4:22 p.m., Devon gave notice that it was dishonoring the Manus check and returned it to Crocker. The parties dispute whether Crocker informed Merrill Lynch that the Manus check had been returned and whether Merrill Lynch instructed Crocker to redeposit the check. At any rate, it is clear that Crocker did redeposit the Manus check. Devon received it for the second time on August 13 and dishonored and returned it on August 14. Sometime at the end of August, Manus was placed in receivership and prohibited from paying Merrill Lynch or any of its other creditors.

## Previous Proceedings

Rather than pursuing the bankrupt Manus, Merrill Lynch brought suit against Crocker and Devon in the United States District Court for the Central District of California. This litigation will be referred to as the California case. The court dismissed Devon from the California case for want of personal jurisdiction, and, according to Devon, Merrill Lynch later settled with Crocker.

Subsequently, Merrill Lynch brought the present suit against Devon, asserting that Devon twice dishonored the Manus check in an untimely manner. Devon, in turn, brought third-party actions against Continental and Crocker. After the parties conducted discovery, Devon moved for summary judgment against Merrill Lynch. The third-party complaints were essentially placed in abeyance while Devon's summary judgment motion was pending.

In moving for summary judgment, Devon argued that it dishonored the Manus check in a timely fashion as a matter of law. In general, a bank may dishonor a check before it makes final payment on the check but no later than the bank's midnight deadline. See Ill.Rev.Stat. ch. 26, ¶ 4–301(1) (1987) (U.C.C. § 4–301(1) (hereinafter, references will only be made to the U.C.C.). The bank's midnight deadline is midnight of the banking day after the banking day on which the bank receives the check. U.C.C. § 4–104(1)(h). Judge Leighton held, and the Court of Appeals agreed, that Wednesday, August 1, 1979, the day Devon received the Manus check, was not a "banking day" for Devon since it was not

1. Two third-party defendants, Continental Illinois National Bank ("Continental") and Crocker National Bank ("Crocker"), have moved to dismiss Devon's claims against them for failure to state a claim upon which relief can be granted. These motions are taken under advisement.

open to the public. Thus, Devon had until midnight on Friday, August 3, at the latest to dishonor the check. *See* 654 F.Supp. at 509; 832 F.2d at 1007.

As the Court of Appeals noted, however, the midnight deadline was only the "outside limit"; for dishonor to be effective, Devon had to dishonor the check before it made final payment. Under U.C.C. § 4–213(1), an item may be "finally paid" in a number of ways, but for the purposes of this litigation, the important way is in subsection (c): "An item is finally paid by a payor bank when the bank has ... (c) completed the process of posting the item to the indicated account of the drawer, maker or other person to be charged therewith." U.C.C. § 4–213(1)(c). The "process of posting" referred to in section 4–213 is defined in section 4–109:

> Process of Posting. The "process of posting" means the usual procedure followed by a payor bank in determining to pay an item and in recording the payment including one or more of the following or other steps as determined by the bank:
> (a) verification of any signature;
> (b) ascertaining that sufficient funds are available;
> (c) affixing a "paid" or other stamp;
> (d) entering a charge or entry to a customer's account;
> (e) correcting or reversing an entry or erroneous action with respect to the item.

Judge Leighton and the Court of Appeals disagreed over the meaning of "the process of posting" and, in particular, over subsection (e). Judge Leighton held that "correcting or reversing an entry" meant that Devon could "correct the entry which erroneously indicated that the funds were insufficient." 654 F.Supp. at 510. The Court of Appeals reversed this particular holding and, following a long line of cases, held that section (e) did not cover the situation in this case. The Court reasoned that

section 4–213(1), the section defining final payment, was enacted to expedite final settlement on checks. Section 4–213(1) put "the 'payment' of the check at the completion of the bank's ordinary process, whatever that process may be." 832 F.2d at 1009. To allow dishonor of a check at a later time, as Judge Leighton had done, would "rip[ ] § 4–213(1)(C) out of the Uniform Commercial Code." *Id.* at 1008. According to the Court of Appeals, section 4–109(e) would apply only if a bank had committed an error in its ordinary process of determining whether a check should be paid. Devon had not committed any errors in determining that the Manus check should be paid; it was not until later that Devon discovered that the Cash Reserve check had bounced and that Manus' account therefore had insufficient funds. Thus, Devon had made final payment on the Manus check and was liable on it. Devon's attempt to dishonor was untimely.[2]

### The Present Motion

Devon premises its present motion for summary judgment on the last paragraph of the Court of Appeals' opinion. Because of that paragraph's importance to the present opinion, we set it out here in full:

> Devon makes one last argument. Merrill Lynch sued Crocker Bank, claiming that it dallied in informing Merrill Lynch of the dishonor of the Manus check. The complaint in that suit states that had Merrill Lynch received timely notice of the dishonor, it could have obtained good funds from Manus to cover the check before Manus entered bankruptcy. Devon says that this is an "admission" that Devon's actions did not injure Merrill Lynch. Nonsense. Merrill Lynch had to mitigate any damages it suffered, and its pleading in the California case says that had it known of the problem, it could have mitigated. But it did not know, and therefore could not take the necessary steps. Whatever rights Devon may have

---

**2.** In its amended complaint, Merrill Lynch claimed that Devon's second attempt to dishonor the Manus check was also untimely. Merrill Lynch did not pursue this claim on appeal and has apparently conceded that the dishonor was

timely. *See* Merrill Lynch's Response to Devon's Local Rule 12(e) statement, ¶ 5. At any rate, because the Court of Appeals has held that Devon is liable because its first dishonor was untimely, the issue is now moot.

against Crocker Bank, this pleading is hardly a reason why Merrill Lynch should lose.

832 F.2d at 1011.

In its present motion, Devon claims that the Court of Appeals was right about the law, but wrong about the facts. It enthusiastically agrees that "Merrill Lynch had to mitigate any damages it suffered." Devon also claims, however, that, contrary to the statement of the Court of Appeals, Merrill Lynch did know of "the problem," that is, did know that Devon had returned the check on August 3, 1979. According to Devon, the Court of Appeals based its statement on allegations in the California case, which apparently were repeated in arguments before the Court of Appeals. Devon seeks to disprove these allegations. It points to an affidavit of Lauretta Garner, a Crocker employee, who states that she informed a Merrill Lynch employee named Audrey that the check had been returned and that Audrey instructed Ms. Garner to redeposit the check. Devon also points to pleadings from the Merrill Lynch suit against Crocker in California, in which Merrill Lynch stated that it would have obtained cleared funds from Manus if it had known the check had been returned. Devon asserts that by knowingly redepositing the check, Merrill Lynch breached its duty to mitigate and thus is precluded from recovering against Devon.

Merrill Lynch responds to Devon's motion by citing depositions from the California case that indicate that Merrill Lynch was never informed that the check had been returned. Merrill Lynch also argues that even if it had known, it did not fail to mitigate merely by redepositing the check. In addition, Merrill Lynch notes that Devon has not indicated that Merrill Lynch could have mitigated and points to evidence that indicates it could not. Finally, Merrill Lynch argues that a party need only take reasonable steps to mitigate, and that Devon did not show that redepositing the check was unreasonable.

In its reply, Devon repeats the arguments of its motion. In addition, it notes that Merrill Lynch has failed to show that the depositions from the California case were lawfully taken and duly filed.

### Summary Judgment

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material facts and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

### The Duty to Mitigate

We must first determine what law will govern our decision here. The Uniform Commercial Code does not directly consider the mitigation of damages, but section 4–102(2) of the Code tells us that "[t]he liability of a bank for action or non-action with respect to any item handled by it for purposes of presentment, payment or collection is governed by the law of the place where the bank is located." Since we are considering Devon's liability for the Manus check, and since Devon is in Illinois, we must look to Illinois law. *Accord Banco Ganadero y Agricola v. Society National Bank of Cleveland*, 418 F.Supp. 520, 527 (N.D. Ohio 1976); R. Anderson, *Anderson on the Uniform Commercial Code* § 4–102:5 at 615 (1984).

The Illinois law of mitigation of damages has been stated this way:

> As a general proposition, the law imposes upon a party, injured from another's breach of contract or tort, the active duty of making reasonable exertions to render the injury as light as possible. If, by this negligence or wilfulness, he allows the damages to be unnecessarily enhanced, the increased loss, that which

was avoidable by the performance of his duty, falls upon him.

*Culligan & Rock River Water Conditioning Co. v. Gearhart,* 111 Ill.App.3d 254, 258, 66 Ill.Dec. 902, 905, 443 N.E.2d 1065, 1068 (2d Dist.1982). As the passage quoted above makes clear, a party need only take reasonable steps to mitigate damages. *See also In re X–Cel, Inc.,* 75 B.R. 781, 788 (N.D.Ill.) (Aspen, J.), *appeal dismissed,* 823 F.2d 192 (7th Cir.1987); *Nancy's Home of the Stuffed Pizza, Inc. v. Cirrincione,* 144 Ill.App.3d 934, 941, 98 Ill.Dec. 673, 678, 494 N.E.2d 795, 800 (1st Dist.1986). Although the duty to mitigate is most often applied in cases involving contracts, it also applies in virtually every type of case in which the recovery of a money judgment or award is authorized. *Kelly v. Chicago Park District,* 409 Ill. 91, 98, 98 N.E.2d 738, 742 (1951).

Clearly, in order to mitigate, a party must know or at least foresee that it will be harmed by the other party's actions. *Montefusco v. Cecon Construction Co.,* 74 Ill.App.3d 319, 324, 30 Ill.Dec. 235, 236, 392 N.E.2d 1103, 1106 (3d Dist.1979). In addition, a party need not mitigate unless it could foresee damages that might result from its failure to do so. *Slovick v. All American Bank of Chicago,* 163 Ill.App.3d 741, 747, 114 Ill.Dec. 792, 796, 516 N.E.2d 947, 951 (1st Dist.1987).

Applying these principles to this case, we conclude that there are issues of material fact which preclude summary judgment. The first such issue is whether Merrill Lynch knew that the Manus check had been returned the first time. As noted above, Devon relies on the affidavit of Lauretta Garner, a Crocker employee, who states that on August 10, 1979, she informed a Merrill Lynch employee named Audrey that the check had been returned. According to Ms. Garner, Audrey instructed her to redeposit the check. In response, Merrill Lynch cites the deposition from two of its employees, Cloyd Bestelmeyer and Audrey Lloyd, presumably the Audrey referred to in Ms. Garner's affidavit. These depositions purportedly were taken during discovery in the California case and indicate that Crocker did not inform Merrill

Lynch that the check had been returned, and that Merrill Lynch did not instruct Crocker to redeposit the check. Devon concedes in its reply that the Merrill Lynch depositions would create a material issue of fact but argues that we should not consider them because Merrill Lynch has not established that they were lawfully taken and duly filed in the California case.

To be certain, if Merrill Lynch wished to present these depositions at trial, it would have to lay a proper evidentiary foundation for them. However, even if we do not consider the Merrill Lynch depositions, issues of material fact remain. Even if Merrill Lynch knew that the check had been returned, this does not necessarily mean that it knew or foresaw it would be harmed if it failed to mitigate. *See Slovick v. All American Bank of Chicago,* 163 Ill.App.3d 741, 747, 114 Ill.Dec. 792, 796, 516 N.E.2d 947, 951 (1st Dist.1987). Devon argues that Merrill Lynch must have known that it would be harmed, just by knowing that the check had been returned, but we believe this is only one factor that a finder of fact might consider in deciding the issue. Thus, summary judgment is inappropriate on this issue.

Devon also argues that summary judgment should be granted on the issue of whether Merrill Lynch could have mitigated. Devon contends that this issue is controlled by Merrill Lynch's pleadings in the California case, which Devon has verified by affidavit. In paragraph 34 of the complaint in that case, Merrill Lynch alleged that if Crocker had informed it that the check had been returned, Merrill Lynch "would have obtained cleared funds from Manus." Devon contends that this is an admission that Merrill Lynch could have mitigated. In response, Merrill Lynch points to documents which purport to show that Manus issued a stop order on the check on August 8, 1979, and that Manus had insufficient equity in its account with Merrill Lynch to cover the check. Devon suggests that these documents have not been properly authenticated. Yet, even if we do not consider them, an issue of material fact again remains. A party need only

take reasonable steps to mitigate its damages, *see Nancy's Home of the Stuffed Pizza, Inc. v. Cirrincione,* 144 Ill.App.3d 934, 941, 98 Ill.Dec. 673, 678, 494 N.E.2d 795, 800 (1st Dist.1986), and reasonableness is generally a question of fact to be determined from all the circumstances. *See, e.g.,* J. Calanari & J. Perillo, *The Law of Contracts* § 14–15 at 540 (2d ed. 1977). Certainly, obtaining cleared funds from Manus would have been a reasonable way to mitigate, but redepositing may have been reasonable under the circumstances as well. We are unwilling to find as a matter of law that redepositing the returned Manus check was unreasonable.

Accordingly, for the reasons stated above, Devon's motion for summary judgment is denied. It is so ordered.