(No. 26879.—

ERNEST JONES *et al.,* Appellants, *vs.* AUGUSTA I. DOVE *et al.,* Appellees.

*Opinion filed March 16, 1943.*

LeForgee, Samuels & Miller, (Charles C. Le-Forgee, William M. Rice, and Fletcher C. Ransom, of counsel,) for appellants.

Walter Davidson, and Craig Van Meter, (L. G. Owen, of counsel,) for appellee the Carter Oil Company.

Guy L. Smith, and John J. Baker, for other appellees.

Mr. Justice Wilson delivered the opinion of the court:

Plaintiffs Ernest Jones and H. D. Banning, filed their second amended complaint against the defendants, Augusta I., F. R., T. C. and Neta Y. Dove, W. L. and Julia E. Smith, and the Carter Oil Company, seeking damages, an accounting of the rents, issues and profits from May 1, 1937, and specific performance of articles of agreement for warranty deed, dated January 5, 1935, entered into between W. L. Smith, acting as agent for Julia E. Smith and Augusta I. Dove, the owners and sellers, and plaintiff Ernest Jones, as purchaser, involving one hundred five acres of farm land located in Fayette county. After a hearing before the chancellor, a decree was entered, dismissing for want of equity plaintiffs' second amended complaint, and entering judgment for costs against the plaintiffs. From this order plaintiffs appeal directly to this court, a freehold being involved. (*Winkelmann* v. *Winkelmann,* 345 Ill. 566.) Carter Oil Company, a defendant, has since been dismissed from the cause by agreement of the parties.

By the terms of the agreement, Jones obligated himself to pay $2000 for the land, evidenced by three notes,—the

first for $200, to be paid on or before March 1, 1935; the second for $200, payable on or before December 1, 1935, and the third for the balance of $1600, due on or before January 5, 1940. The notes bore interest at six per cent, and Jones agreed to pay all taxes levied after the year 1934, and to keep the buildings insured. Smith agreed to furnish an abstract to date showing merchantable title, and to deliver possession March 1, 1935. The agreement further provided that in case Jones failed to make the payments or perform the covenants, the contract should, at the option of Smith, be forfeited and terminated; that time of payment should be of the essence, and that all covenants and agreements should extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties.

It is conceded that Jones paid the first $200 note on March 1, 1935, when it was due, and that he thereupon entered into possession of the farm. It is also undisputed that he failed to pay the second $200 note, due December 1, 1935, when it was due or at any time thereafter. Jones also admits that in March, 1937, he and his family moved from the premises, and that during the month of April, 1937, such of his farming equipment as then remained on the farm was moved. The evidence also shows that on April 2, 1937, Jones, for a consideration of five dollars in cash, assigned, in writing, to H. D. Banning, coplaintiff, a seven-ninths interest in the contract, and that Banning immediately sold for $2.50, to D. E. Richardson, a one-half interest in the contract. On the same day, Banning and Richardson recorded the contract and assignment, drove to Beecher City, Illinois, met W. L. Smith and tendered him $2200 in full payment of Jones' obligations under the contract. Smith declined the proffered money, stating Banning and Richardson had no interest in the premises. Banning, on April 3, 1937, employed Joseph Logsdon to work for him on the farm. Logsdon remained so employed until

about the middle of April, 1937, when he removed his belongings upon being threatened with eviction by W. L. Smith.

Defendants maintain that the assignment by Jones to Banning, on April 1, 1937, was without effect, having occurred at a time when it is insisted Jones had no further interest in the property. Defendants further contend that in January, 1936, Jones admitted his inability to pay the $200 note due December 1, 1935, rescinded the contract, and agreed to occupy the farm for the 1936 crop year under a rental agreement. Jones, in his testimony, denies he ever rescinded the contract, or agreed to rent the farm. Defendants also contend that notice of dispossession was read to and served upon Jones in November, 1936, demanding he vacate the premises March 1, 1937, and that pursuant to such notice, Jones moved from and abandoned the farm. Jones admits service of the notice of dispossession, and that he and his family moved in March, 1937, and that his farm machinery was moved in April, 1937, but denies that such removal constituted abandonment. As bearing upon the issues of fact thus made, with respect to rescission of the contract, entry into a lease, and abandonment, a consideration of the evidence pertaining to events transpiring subsequent to December 1, 1935, is required.

Both Jones and Smith testified to a conversation held in Beecher City, shortly after December 1, 1935, wherein Smith asked for the December 1 payment. Jones testified that when informed he could not pay, Smith directed him to stay on the farm, stating that he was a good worker, and "would make it." Smith testified Jones then told him he had some livestock to be sold in December, when the payment would be made, and that he, Smith, informed Jones such delay in payment would be satisfactory.

Smith testified he visited Jones sometime in January, 1936. Jones testified it was in February. Both agree a demand was again made by Smith for payment of the

December note. Jones testified he told Smith he was unable to pay the note, but would do so later, and that Smith agreed to the delay. According to Smith's version, Jones stated he could not pay the note, but that he would turn the farm back to him, and that Jones inquired about staying for another year. Smith testified he replied, "I will probably let you have—I'll rent you the place." Smith further testified that a week or ten days later he again met Jones in Beecher City, and in their conversation it was then agreed that Jones should rent the farm for the ensuing year at a pasture or privilege rent of $50, with a further provision that, if Jones allowed to remain on the farm a silo which he had built in 1935, he would be credited with the $50 privilege rent, and that Jones was to pay or give as rent one third of the crops raised. Jones denies a lease was mentioned by Smith in this conversation.

Jones testified that in May, 1936, he received a letter from Smith, inquiring when he would be able to make the back payment, and that he visited Smith in Beecher City. Jones states he told Smith he would pay upon receipt of some checks expected shortly for corn and hogs and that Smith "said it would be alright, I guess." Smith denies this conversation or that he ever wrote or mailed such a letter to Jones.

Jones further testified that in June, 1936, he executed an oil and gas lease to M. R. Van Almen, and that about a week later he met Smith at Beecher City, and informed him regarding such lease, and that thereupon Smith stated, "Well, that's fine." This conversation is also denied by Smith, who states he did not learn, until late in the fall of 1936, that Jones had executed an oil and gas lease.

Jones further testified that in July or August, 1936, he had a conversation with Smith at the farm, in the presence of his children, Loretta and Harold Jones; that Smith stated he had come down to take the farm, and that he, Jones, declared, "Well, I'd rather keep it and make my

payment," and that Smith insisted, asserting "I'm going to take it back. You don't need it any longer. I wouldn't take a thousand dollars an acre for that farm now." Jones further testified it was during this conversation that Smith suggested Jones could remain on the farm during the balance of the 1936 crop year and pay, as rent, one third of the crops raised and $50 privilege rent. To an inquiry as to what he said, if anything, in reply to Smith's proposal, Jones said, "I didn't give him no reply." Jones's daughter, Loretta, claimed by Jones to have been present, did not testify. Harold, his son, testified that no one was present at the conversation except Smith, his father and himself. His testimony substantially corroborated his father. Smith denied the conversation, or that he was at the farm in July or August, 1936. He further denied that he, at any time, after January, 1936, when he claims Jones agreed to turn the farm back, asked Jones to make any payment on the purchase price.

The evidence as to rental payments of grain by Jones is similarly in conflict. Smith testifies he obtained rent corn on three occasions after the 1936 crop was in, once from Jones himself, and that he obtained ten bushels of wheat in August or September, 1936, representing one half of the landlord's share of crop produced by Lee Lilly, who had subleased part of the premises from Jones. According to Jones, Smith neither requested nor received any of the corn crop, he having sold one half and used the balance for feed. He likewise maintains none of his alfalfa crop was delivered to Smith, most of which was sold and part used for feed. He, however, did admit turning over to Smith ten bushels of wheat from the Lee Lilly crop, representing one half of Jones's share, saying that he gave it to Smith because he owed a payment on the place and "thought he'd give him that much of it."

From Jones's testimony it appears that in December 1935, and in January, 1936, livestock sales were made by

him in Shelbyville and East St. Louis, the proceeds from which amounted to approximately $185 and $180, respectively. Jones testified to the purchase of $40 worth of chickens out of the first check, and that the money from the second sale was used to pay a note for $200 owed to Frank Fogle, at Herrick.

Seven nearby residents testified to conversations had with Jones, mostly during the latter part of 1936, wherein he informed them of his intention to relinquish the farm. One of these witnesses testified he purchased from Jones some lumber and corrugated roofing which the latter had brought to the farm.

On November 2, 1936, Augusta I. Dove and Julia E. Smith contracted in writing for the sale of the premises, to Ralph A. Sinclair and his daughter, Fleta Sinclair, for the sum of $2000, reserving in the vendors all oil and gas rights, providing, among other things, that Ernest Jones was in possession of the premises under an oral lease expiring March 1, 1937, when Sinclair was to have possession. On November 6, 1936, Smith and Sinclair visited the farm and Smith then read and served upon Jones a notice to quit and deliver up the premises on or before March 1, 1937. Smith testified that he then stated to Jones, "We only had a verbal rental contract and this is just to protect us in case anything should happen." Smith further testified that he reminded Jones of his previous promise to allow the silo to remain; that Jones agreed not to move it, and that he promised to vacate the farm March 1, "if he had to move out in the middle of the road." Jones admitted Smith read the notice to him, and testified Smith stated, "Don't give me no trouble, Ernie—don't give me no trouble." He further testified that he made no reply to Smith on this occasion; that he continued to live on the farm, with his family, until about March 20, 1937, when he moved to the Lancaster farm, previously rented by him for the 1937 crop season. Jones denied that at the time

of removal he delivered up possession of the farm, but claims there remained thereon various items of his farming equipment, and that these items were not removed until sometime in April, 1937. Jones also denied that he ever, at any time, had an intention of abandoning his interest in the land or contract. His reason for moving, he declared, was because he knew it was necessary to have some place where he could farm and maintain a home for his family during the 1937 crop year. To quote Jones, "He gave me notice to move. I thought he might come out and set me and the kids out on the road, and I thought I'd get out and get another farm to move on."

Ralph Sinclair, one of the purchasers under the November 2, 1936, contract, testified that Jones moved between March 15 and 20, 1937; that when he moved nothing remained on the premises belonging to Jones; that he, Sinclair, thereupon took possession under his contract of purchase; that after Jones's removal he was so in possession during the period of Logsdon's occupancy; that he was there every day, or some time every day, for an extended period; that during the year 1937 he farmed the land, dug a cistern, glazed, replastered, papered, and installed a new roof on the house, and that, after Logsdon departed, about the middle of April, 1937, neither Jones, Banning, nor anyone for them, ever attempted to enter.

Smith further testified that he returned the two unpaid notes to Jones, one for $200 and one for $1600, in Beecher City, after Jones vacated the farm; that when he handed them to Jones, he said: "Here's your notes you gave me on the farm," and that Jones took the notes and replied, "All right." Jones denied Smith ever returned the notes.

The law is well settled that one who has abandoned a contract and has delivered up possession of property in pursuance of his declaration that he is unable to fulfill such contractual obligations is not entitled to specific performance of such contract. The rule in equity is that he must

show that he has always been ready, willing and able to perform the contract on his part, and he is not entitled to specific performance if he has consented to a rescission of the contract or has abandoned it. (*King* v. *Walrath,* 313 Ill. 551; *Hayes* v. *Carey,* 287 id. 274; *Lasher* v. *Loeffler,* 190 id. 150; *Cuppy* v. *Allen,* 176 id. 162.) Whether a contract has been rescinded or abandoned by a party to it may be deduced from circumstances or course of conduct clearly evincing such rescission or abandonment. *Stuckrath* v. *Briggs & Turivas,* 329 Ill. 555; *Hayne* v. *Fenton,* 321 id. 442.

The evidence being conflicting on the decisive issues in the case, it was for the chancellor, who heard the testimony and saw the witnesses, to say whom he believed. By the decree entered it is evident that the narration of events by Smith was accepted, and the finding cannot be said to be against the manifest weight of the evidence. Although Jones strenuously denies he intended to give up or abandon the farm, his denial does not square with the intention imputed to him in the conversations related by numerous disinterested neighbors. When consideration is given to all the evidence, it is clear that the entire course of conduct pursued by Jones, from the time the second $200 note was due, was incompatible with his announced desire and intention to fulfill the terms and conditions of the contract. He failed to make the December 1, 1935, payment, or to pay any taxes or insurance premiums. In addition, he accepted a notice of dispossession served upon him by Smith, and vacated the premises in accordance with such notice, thus acquiescing in the demand made. The actuating motive advanced by Jones for vacating, namely, his fear that he and his children would be forcibly ejected, is inconsistent with his claim of ownership under the contract. His removal, under the circumstances shown, constituted voluntary abandonment, and it would therefore be contrary to equity to sustain his complaint for specific performance.

454

A finding that he abandoned the farm, being justified by the evidence, it necessarily follows that Jones, as contended by defendants, had no right to convey any interest, either in the premises or the contract, and his purported assignment to Banning, and Banning's subsequent recording and tender to Smith in fulfillment of Jones's obligation under the contract, were ineffectual and void.

Our decision regarding Jones's abandonment renders unnecessary a consideration of the numerous other contentions advanced by plaintiffs, relating to waiver by Smith of the provision of the contract that time is of the essence by not insisting upon prompt payment, also the questions pertaining to forfeiture and when it may be declared, and the failure on the part of defendants to furnish an abstract of title brought down to date.

The decree of the circuit court of Fayette county is correct, and it is affirmed. *Decree affirmed.*