MARTIN RUDDOCK, Plaintiff-Appellant and Cross-Appellee, v. FIRST NATIONAL BANK OF LAKE FOREST, as Guardian of the Estate of Rowland S. Stevens, et al., Defendants-Appellees and Cross-Appellants.

Second District No. 2—89—0552

Opinion filed May 30, 1990.—Rehearing denied September 20, 1990.

908

Sullivan, Smith, Hauser & Noonan, Ltd., of Waukegan (Robert J. Hauser, of counsel), for appellant.

Diver, Bollman, Grach & Quade, and Denis J. McKeown, both of Waukegan, and Roger A. White & Associates, Ltd., of Lake Bluff (Robert M. Bollman and Kendrick L. Scott, of counsel), for appellees.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Martin Ruddock, brought this action in the circuit court of Lake County against the First National Bank of Lake Forest (Bank), as guardian of the estate of Rowland S. Stevens, and Elmer and Pauline Crum, seeking damages and specific performance of a contract for the sale of a clock belonging to Stevens' estate. Plaintiff's complaint and amended complaint alleged that subsequent to the formation of his contract with the Bank to purchase the clock, the Bank sold and delivered the clock to the Crums, who had notice of the prior sale to plaintiff. Plaintiff also advanced a claim for tortious interference with contractual relations against the Crums. Following a bench trial, the trial court entered judgment in favor of plaintiff in the amount of $28,000 plus costs against the Bank, denying plaintiff's claim for specific performance against the Crums. The trial court entered judgment in the Crums' favor on plaintiff's claim of intentional interference with contractual relations. Following consideration of the Bank's post-trial motion, the trial court reduced the award of damages to $7,000. Plaintiff appeals, and the Bank and the Crums cross-appeal.

Plaintiff raises the following issues on appeal: (1) whether the trial court erred in denying plaintiff specific performance; (2) whether the trial court erred in the computation of damages; (3) whether the trial court erred in entering judgment in favor of the Crums on plaintiff's claim for intentional interference with contractual relations; and (4) whether the trial court erred in denying plaintiff's motion for attorney fees pursuant to section 2—611 of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—611). In its cross-appeal, the Bank contends that the trial court erred in awarding damages to plaintiff.

■■ ■ At the outset, we note that the Crums have filed a notice of cross-appeal. While the judgment below was entirely favorable to the Crums, they challenge certain findings of the trial court. One who has obtained by judgment all that has been asked for in the trial court cannot appeal from the judgment. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 386, 457 N.E.2d 9.) Findings of the trial court adverse to the appellee do not require the appellee's

cross-appeal if the judgment of the trial court was not at least in part against the appellee. (*Material Service Corp.*, 98 Ill. 2d at 387, 457 N.E.2d at 12.) While the judgment below provides no basis for a cross-appeal by the Crums, the issues raised therein are properly before us as the judgment may be sustained upon any ground warranted regardless of whether it was relied on by the trial court and regardless of whether the reason given by the trial court was correct. *Material Service Corp.*, 98 Ill. 2d at 387, 457 N.E.2d at 12.

Evidence adduced at trial establishes the following facts. On March 30, 1982, the Bank was appointed guardian of the estate of Rowland S. Stevens. Ronald Kilgus, a trust officer of the Bank, was assigned to manage Stevens' estate and provide for the support and care of Stevens, who was confined to a nursing home. During the summer of 1982 the Bank decided to sell Stevens' clock collection in order to pay for his care. Kilgus testified that on July 13, 1982, the Bank obtained court approval to have a public sale of Stevens' clock collection conducted. The Bank subsequently decided to conduct a private sale of the collection at Stevens' home.

A sale was conducted on December 4, 1982. Plaintiff was in attendance at the sale and negotiated with Kilgus for the purchase of several clocks. Plaintiff gave Kilgus a list of the clocks he wanted to purchase which included an astronomical clock which is the subject of this dispute. The price for that clock was $7,000. The list indicates that another of the clocks plaintiff desired to purchase was on "hold" for another party, but the list bears no such indication with respect to the astronomical clock. Kilgus made no suggestion to plaintiff that the astronomical clock was being reserved for any other party. Plaintiff made a down payment for the clocks listed, and it was agreed that he would receive the clocks upon payment of the balance due by January 11, 1983.

On December 6, 1982, Kilgus telephoned plaintiff and informed him that he could not purchase the astronomical clock because there was a prior written agreement between Stevens and another party for the sale of the clock. Kilgus previously had a conversation with the Crums wherein they indicated that they believed they had the right to purchase the clock based upon prior negotiations with Stevens and later negotiations with the Bank.

On December 7, 1982, the circuit court of Lake County, probate division, entered an order directing the Bank to sell Stevens' clock collection privately as soon as practical. Apparently, this was the first order authorizing a private sale of the collection.

Elmer Crum testified that he had entered into an agreement with

Stevens pertaining to the clock in 1978. Apparently, the Crums were to receive the clock in exchange for installation of a burglar alarm at Stevens' residence. After learning that Stevens had been adjudicated incompetent, Crum attempted to obtain the clock from the Bank. The Bank refused to turn over the clock to Crum but informed him that if he was owed money, he could submit a bill to the estate. Crum submitted a bill for $4,200 which was paid by the estate. Crum believed that he had reached an agreement with the estate whereby he would have a right of first refusal if the clock were ever offered for sale. A letter from Kilgus to the Crums dated May 21, 1982, pertaining to payment for the burglar alarm system states:

"Your letter dated January 4th, indicates payment was to be made in accordance with verbal agreement which, of course, the Court will not allow us to honor. Therefore, if approved, payment will be made by check. You will have an opportunity, however, to be informed when a sale of the clock collection takes place if you wish to purchase any items."

Kilgus testified that at some time he verbally agreed to allow the Crums the first option to purchase the clock. Kilgus stated the estate received no consideration for the option.

A letter to Crum dated November 29, 1982, advised Crum of the upcoming sale of Stevens' clock collection. Crum met with Kilgus, but he did not remember whether Kilgus informed him of the December 4 sale date. When he met with Kilgus, Crum segregated the clocks in which he was interested, placing them around the base of the astronomical clock.

Kilgus recalled that prior to the sale the Crums telephoned him and informed him that they could not attend. Kilgus did not assure them that he would hold any clocks for them. Crum did not attend the sale on December 4. Crum testified that during that day Kilgus called and informed him that the clock had been sold to another party. Later that day Mrs. Crum telephoned Kilgus. She told him that if the clock was not Elmer's by Monday, she would "have papers filed in the Waukegan court and stop the sale of everything until the clock was Elmer's."

Plaintiff tendered the balance due for the clocks, including $7,000 for the astronomical clock. The Bank returned $7,000 to him. Thereafter, plaintiff and the Crums apparently discussed the possibility of plaintiff purchasing the clock from the Crums.

Plaintiff testified that for the past 10 years he had been conducting an in-depth study of astronomical clocks. Plaintiff testified that the subject clock represented the pinnacle of the development of the

precision pendulum clock in the United States. The clock was a master clock for the Western Union Time Service. Ernest Martt, a horologist, testified that the clock was 1 of possibly 12 of its type manufactured. He testified that at the time of trial the clock was worth $40,000. Plaintiff testified that the clock was worth $30,000 to $35,000 at the time of trial.

Plaintiff filed his complaint in this action on May 5, 1986. Originally, plaintiff sought relief against the Bank only, seeking an award of damages sufficient to enable him to purchase the clock from the Crums. Subsequently, on May 15, 1987, plaintiff amended his complaint, seeking specific performance against the Crums. Plaintiff's amended complaint also advanced a claim for intentional interference with contractual relations against the Crums, seeking recovery for attorney fees allegedly incurred as a result of the Bank's breach of its contract with him. The Crums raised the affirmative defense of *laches* to the claim for specific performance. With respect to the intentional interference with contract claim, the Crums raised the one-year statute of limitations for intentional torts as an affirmative defense.

On January 24, 1989, the trial court entered judgment in favor of plaintiff against the Bank in the amount of $28,000, but denied plaintiff's section 2—611 motion for attorney fees. The trial court found, *inter alia*, that plaintiff had a valid contract with the Bank; that the Crums had no valid right of first refusal but were *bona fide* purchasers for value; that the action was filed within the statute of limitations and was not barred by *laches*; and that the value of the clock at the time of judgment was $35,000. The trial court found in favor of the Crums on plaintiff's claims for specific performance and intentional interference with contract. Following the filing of a post-trial motion by the Bank, the trial court reduced the damages award to $7,000.

Plaintiff initially contends that the trial court erred in failing to award him specific performance of the contract for the sale of the clock despite the fact that it had subsequently been sold and delivered to the Crums. Plaintiff maintains that, because the Crums purchased the clock with notice of the prior sale, an order of specific performance may be entered against them. The Bank responds that, under the circumstances here, denial of the equitable remedy of specific performance was proper. The Crums contend that the principle allowing a buyer under certain circumstances to obtain specific performance despite a sale to a third party is applicable only to contracts for the sale of real property. The Crums additionally maintain that plaintiff had no contract with the Stevens estate both because the evidence of

negotiations between plaintiff and Ronald Kilgus does not show the formation of a contract and because at the time of these negotiations the Bank did not have court approval to dispose of the clock by private sale. Alternatively, the Crums contend that the remedy of specific performance is unavailable to plaintiff because he has an adequate remedy at law. Moreover, the Crums contend that the action against them for specific performance was barred by *laches* and the statute of limitations. The Crums further argue that plaintiff abandoned his contract. Finally, the Crums argue that plaintiff was not entitled to equitable relief because he was guilty of unclean hands.

■ Section 2—716(1) of the Uniform Commercial Code (Code) (Ill. Rev. Stat. 1987, ch. 26, par. 2—716(1)) provides that "[s]pecific performance may be ordered where the goods are unique or in other proper circumstances." The determination of whether to grant specific performance lies within the discretion of the trial court. (*Dawdy v. Sample* (1989), 178 Ill. App. 3d 118, 127, 532 N.E.2d 1128; Ill. Ann. Stat., ch. 26, par. 2—716, Uniform Commercial Code Comment, at 594 (Smith-Hurd 1963).) Article 2 of the Code seeks to further a more liberal attitude than some courts have shown in connection with the specific performance of contracts of sale. Ill. Ann. Stat., ch. 26, par. 2—716, Uniform Commercial Code Comment, at 594 (Smith-Hurd 1963).

The requirement of uniqueness has clearly been satisfied in the present case as the evidence establishes that the clock is one of a very few of its type manufactured, may be the only one in existence, and is of historical significance. Furthermore, the Crums' attorney stipulated the clock was unique.

The question remains whether specific performance is available in view of the fact that subsequent to plaintiff's negotiations with the Stevens estate the clock was sold and delivered to the Crums. Plaintiff argues that because the Crums had notice of the sale to him, their purchase of the clock is no impediment to an order of specific performance. In support of this proposition, plaintiff cites, *inter alia*, *Stein v. Green* (1955), 6 Ill. 2d 234, 128 N.E.2d 743, which involved the question of a lessee's right to possession of real property as against a subsequent purchaser of the property. The court stated, "it has long been held that every subsequent purchaser, with notice, becomes subject to the same equities as the party from whom he purchased and, although not personally liable, may be compelled to perform any contract of his vendors." 6 Ill. 2d at 241, 128 N.E.2d at 747.

The Crums respond that the principle stated above is inapplicable to contracts for the sale of personal property. There appears to be no

case law in Illinois addressing the right of a purchaser of personal property to specific performance against a subsequent purchaser with notice of the prior sale. However, cases from other jurisdictions suggest that specific performance is available in such circumstances. *Myhre v. Myhre* (Mont. 1976), 554 P.2d 276, involved a contract for the sale of stock. The court observed: "[t]he rule seems to be that one who acquires or purchases property, knowing that the property is subject to a contract to be sold to another, may be compelled to perform the contract in the same manner and to the same extent as his grantor would have been liable to do had the grantor not made the transfer to him." 554 P.2d at 281; see also *Chandler Trailer Convoy, Inc. v. Rocky Mountain Mobile Home Towing Services, Inc.* (1976), 37 Colo. App. 520, 552 P.2d 522.

The only reason the Crums suggest for distinguishing between real and personal property in this context is that ownership interests in personal property are not subject to recordation and therefore cannot be easily discovered by potential purchasers. We are not persuaded. The rule proposed allowing specific performance would work no hardship on such unwary purchasers since notice of the prior sale is necessary.

■ The trial court apparently denied specific performance based on its finding that the sale to the Crums was a valid sale to a *bona fide* purchaser. The record clearly establishes, however, that that sale only occurred after the Crums were notified that the clock had been sold to plaintiff. Thus, this finding is in error, and, as we discuss below, the denial of specific performance was an abuse of discretion.

The Crums also contend that plaintiff had no enforceable contract with the estate. First, the Crums contend that plaintiff's receipt and confirmation of purchase state that the clock was "on hold" for another party. This contention is meritless. Examination of the documents reveals that they refer to a different clock as being on "hold." Second, the Crums base several arguments on language in a document entitled "conditions of sale." However, plaintiff testified that he was never given any conditions of sale. The evidence clearly establishes an agreement whereby plaintiff would receive the clock in exchange for payment of the balance due by January 11, 1983.

Third, the Crums maintain that no contract was formed because, prior to December 7, 1982, the Bank had not been authorized to sell the clock by a private sale, but, rather, was only authorized to conduct a public sale. While the private sale on December 4 may not have been specifically authorized, the lack of such court authorization did not affect the Bank's *power* to sell the clock. (*Cf. Equitable Life*

*Assurance Society v. Mallers* (7th Cir. 1939), 104 F.2d 567, 568-70.) Moreover, under the circumstances here, we view the court order of December 7, 1982, directing the Bank to sell the collection at a private sale, as confirming the previously conducted private sale to plaintiff.

The Crums further contend that plaintiff abandoned the contract by notifying the Crums that he did not plan to contest the title to the clock, and, therefore, pursuant to the holding in *Jones v. Dove* (1943), 382 Ill. 445, 47 N.E.2d 447, plaintiff is not entitled to specific performance. The court in *Jones* stated as follows:

"The law is well settled that one who has abandoned a contract and has delivered up possession of property in pursuance of his declaration that he is unable to fulfill such contractual obligations is not entitled to specific performance of such contract. The rule in equity is that he must show that he has always been ready, willing and able to perform the contract on his part, and he is not entitled to specific performance if he has consented to a rescission of the contract or has abandoned it. [Citations.] Whether a contract has been rescinded or abandoned by a party to it may be deduced from circumstances or course of conduct clearly evincing such rescission or abandonment." 382 Ill. at 452-53, 47 N.E.2d at 450.

In the present case, plaintiff showed his willingness and ability to perform prior to the Bank's repudiation of the contract. Plaintiff's preliminary indication to the Crums that he would not pursue a claim based on the breach does not constitute abandonment or consent to rescission of the contract under the circumstances. During 1983, plaintiff continued to question the Crums about their alleged verbal agreement to purchase the clock until they refused to speak with him. He also contacted the Bank during 1983 reasserting his legal right to the clock. While other personal matters prevented plaintiff from filing suit until later, the claim was never abandoned.

The Crums additionally maintain that an award of damages was an adequate remedy at law and, accordingly, plaintiff was not entitled to specific performance. This position is without merit. The fact that a value can be assigned to an item of personalty does not necessarily make damages an adequate remedy. The Code's principal requirement for an order of specific performance is that the goods be unique. (Ill. Rev. Stat. 1987, ch. 26, par. 2—716.) Here, the record clearly demonstrates that the clock is unique.

The Crums argue that the trial court erred in not invoking the doctrine of *laches* to bar this action because although plaintiff's cause

of action, if any, arose in December 1982, he did not file suit against the Crums until May 15, 1987. The Crums contend that a letter sent to them by plaintiff, stating that he understood their position, was calculated to lull them into believing he would not bring suit against them. The Crums also note that during the period following the alleged breach and prior to the commencement of the action against them for specific performance, the value of the clock increased dramatically. The Crums maintain that under these circumstances the equitable defense of *laches* is applicable.

■ *Laches* is an equitable principle which bars recovery by a litigant whose unreasonable delay in bringing an action for relief prejudices the rights of the other party. (*People ex rel. Daley v. Strayhorn* (1988), 121 Ill. 2d 470, 482, 521 N.E.2d 864.) Whether the defense of *laches* is available is to be determined based upon the facts and circumstances of each case. (*Nancy's Home of the Stuffed Pizza, Inc. v. Cirrincione* (1986), 144 Ill. App. 3d 934, 941, 494 N.E.2d 795.) Mere delay in asserting a right does not constitute *laches*. (*Cirrincione*, 144 Ill. App. 3d at 941, 494 N.E.2d at 800.) A defendant must show prejudice or hardship rather than mere passage of time. *Cirrincione*, 144 Ill. App. 3d at 941, 494 N.E.2d at 800.

■ The Crums note that it has been stated that "a marked appreciation or depreciation in the value of the property which is the object of controversy, such that the granting of relief would itself work an inequity, is evidence of injury or prejudice justifying the invocation of *laches*. *** In regard to the right at equity to have specific performance of a contract of sale, unreasonable delay coupled with a material advance in value is fatal, for equity will not allow a purchaser to remain in the wings gambling on the future rise in price." (*Schroeder v. Schlueter* (1980), 85 Ill. App. 3d 574, 576-77, 407 N.E.2d 204.) As the Crums note, the highest appraisal of the clock at the time of sale was $7,000. At the time of trial, testimony placed the value between $30,000 and $40,000. Even so, under the circumstances here, we do not view the increase in value as requiring application of the doctrine of *laches*, particularly in view of the fact that plaintiff's delay in asserting his claim against the Crums may have been, in part, attributable to the fact that he was initially attempting to negotiate a purchase of the clock from them. Nor is there any indication that plaintiff waited to file suit to take advantage of any expected increase in value.

■ The Crums also point out that they expended a fairly substantial sum of money, $2,500, restoring the clock. Nonetheless, as an equitable remedy can be fashioned to compensate the Crums for bene-

fits conferred by restoration work, we do not view their expenditure of money as necessarily foreclosing an award of specific performance. It is well established that application of the doctrine of *laches* is within the sound discretion of the trial court and a finding by that court will not be disturbed on review unless the determination is so clearly wrong as to constitute an abuse of discretion. (*In re Marriage of Yakubec* (1987), 154 Ill. App. 3d 540, 544, 507 N.E.2d 117.) We find no abuse of discretion in the trial court's finding with respect to *laches*.

■■ The Crums further argue that the trial court erred in not finding that the suit against them was barred by the statute of limitations. The Crums contend that the four-year period specified in section 2—725 of the Code (Ill. Rev. Stat. 1987, ch. 26, par. 2—725) is the applicable limitations period. The statute of limitations is an affirmative defense which must be pleaded and proved by a defendant. (*Findley v. Posway* (1983), 118 Ill. App. 3d 824, 827, 455 N.E.2d 861.) During the proceedings below, the Crums pleaded the statute of limitations for intentional torts as an affirmative defense to the intentional interference with contract claim. The Crums raised the issue of the Code's limitations period for the first time during closing arguments, but they never moved to amend their pleadings. Their failure to plead this provision constitutes a waiver of the defense. See *Shute v. Chambers* (1986), 142 Ill. App. 3d 948, 951-52, 492 N.E.2d 528.

■■ The Crums also contend that plaintiff is guilty of unclean hands. While the Crums raise some argument in their brief on this issue, they cite no authority in support of their argument as required by Supreme Court Rule 341(e)(7) (113 Ill. 2d R. 341(e)(7)). This contention is therefore waived. (*Mead v. Board of Review* (1986), 143 Ill. App. 3d 1088, 1092, 494 N.E.2d 171.) In any event, there is no merit to this contention.

With respect to plaintiff's right to specific performance, the Bank contends that the trial court properly relied on plaintiff's delay in filing the action for specific performance and the increase in the clock's value in denying specific performance. It is apparent, however, from the trial court's rejection of the defense of *laches* that the trial court did not rely on these factors, but, rather, denied specific performance based upon its conclusion that the Crums were *bona fide* purchasers against whom specific performance would not lie. That finding was erroneous as we have previously determined.

For all the foregoing reasons, we conclude that the trial court abused its discretion in refusing to order specific performance. In view of our resolution of this issue, it is unnecessary to consider is-

sues pertaining to the proper measure of damages raised in plaintiff's appeal and the Bank's cross-appeal.

 Plaintiff next contends that the trial court should have entered judgment for him on his claim for intentional interference with contractual relations against the Crums. As this court has recently observed, the elements of tortious interference with a contractual relationship are:

> "(1) a valid and enforceable contract between the plaintiff and a third party; (2) the defendant's awareness of the contractual relationship; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the third party caused by the defendant's wrongful conduct; and (5) damages resulting from the breach." *Dangeles v. Muhlenfeld* (1989), 191 Ill. App. 3d 791, 800, 548 N.E.2d 45.

 Plaintiff contends the above elements were proved in the instant case insofar as the evidence shows that he had a valid contract of which the Crums were aware and that the Crums, by their threat of legal action, induced the Bank to breach the contract. The court's decision in a bench trial will not be overturned unless it is manifestly against the weight of the evidence. *Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356, 226 N.E.2d 624.

Section 773 of the Restatement (Second) of Torts provides:

> "One who, by asserting in good faith a legally protected interest of his own or threatening in good faith to protect the interest by appropriate means, intentionally causes a third person not to perform an existing contract or enter into a prospective contractual relation with another does not interfere improperly with the other's relation if the actor believes that his interest may otherwise be impaired or destroyed by the performance of the contract or transaction." (Restatement (Second) of Torts §773 (1979).)

In the instant case, the trial court could properly conclude that the Crums acted in good faith, believing they had a valid claim to the clock, and, accordingly, their interference was not improper. (See Restatement (Second) of Torts §773, Illustration 1 (1979); see also *Clifton-Strode, No. 2, Inc. v. Kent* (1982), 110 Ill. App. 3d 525, 528-29, 442 N.E.2d 666.) The court's finding against plaintiff on this claim is not against the manifest weight of the evidence.

Plaintiff also contends that the trial court erred in denying him an award of attorney fees against the Bank pursuant to section 2—611 of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—611). Plaintiff contends that the Bank's answer contains several untrue de-

nials and the trial court's denial of attorney fees is attributable to its erroneous belief that former section 41 of the Civil Practice Act (Ill. Rev. Stat. 1981, ch. 110, par. 41) governed and that a showing of bad faith was necessary.

Section 2—611 of the Civil Practice Law, as in effect at the time the pleadings at issue were filed, provided, in pertinent part, as follows:

"§2—611. Untrue statements. Allegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court upon motion made within 30 days of the judgment or dismissal." Ill. Rev. Stat. 1985, ch. 110, par. 2—611.

It is not sufficient that the facts are ultimately adverse to the pleadings as set forth in the trial court. (*Schnack v. Crumley* (1982), 103 Ill. App. 3d 1000, 1005, 431 N.E.2d 1364.) The moving party must show that the party against whom sanctions are sought knew or should have known that the statements were untrue. (See *Dayan v. McDonald's Corp.* (1984), 126 Ill. App. 3d 11, 16, 466 N.E.2d 945.) Moreover, an award of attorney fees rests entirely within the discretion of the trial court.

■■ In the instant case, plaintiff has failed to point to any evidence in the record that the Bank knew or should have known that the denials were untrue. Additionally, as the Bank notes, certain of plaintiff's allegations contained legal conclusions as to the validity of a contract. Under the circumstances here, we find no abuse of discretion in the denial of fees.

Plaintiff notes, however, that the trial court at one point erroneously referred to the requirement that bad faith be shown. That requirement was eliminated by the legislature in 1976. (See *Dayan*, 126 Ill. App. 3d at 16, 466 N.E.2d at 949.) However, this misstatement occurred early in the proceedings and prior to the trial court's decision to deny fees. We do not view this comment as indicating that the trial court misapplied the law.

■■ As previously discussed, the trial court abused its discretion in denying specific performance. In view of the fact that the Crums purchased from the Stevens estate the clock for the same amount as plaintiff contracted to pay the estate, an appropriate order of specific performance requires payment of the purchase price of $7,000 by plaintiff to the Crums. Moreover, the Crums are entitled to compensa-

tion for the benefit of the restoration work performed on the clock. We note that during the proceedings below and in his appellate brief plaintiff indicated his willingness to compensate the Crums for the cost of repairs. The record shows that the Crums expended $2,500 in repairing the clock. Accordingly, we reverse the portion of the judgment of the circuit court denying plaintiff specific performance and awarding plaintiff damages, and, pursuant to Supreme Court Rule 366(a)(5) (107 Ill. 2d R. 366(a)(5)), the Crums are ordered to deliver the clock to plaintiff upon payment of $9,500. In other respects, the judgment of the circuit court is affirmed.

Affirmed in part; reversed in part.

INGLIS and DUNN, JJ., concur.