THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RAYMOND TURNAGE, Defendant-Appellee.

Second District   No. 2—91—0861

Opinion filed October 28, 1993.

INGLIS, P.J., dissenting.

David R. Akemann, State's Attorney, of Geneva (William L. Browers, Marshall M. Stevens, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Fred M. Morelli, Jr., and Vincent S. Cook, both of Law Offices of Morelli & Cook, of Aurora, and Vincent C. Argento and Jesse V. Barrientes, both of Law Offices of Vincent C. Argento, of Elgin, for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

The State appeals an order quashing the arrest of defendant, Raymond Turnage, and suppressing evidence seized pursuant to that arrest. (See 134 Ill. 2d R. 604(a)(1).) Defendant's arrest was based on a warrant that was later recalled because defendant had already been arrested for the offense described in the warrant.

On appeal, the State argues that the trial court's decision was error because the warrant was valid; and (2) even if the warrant was technically invalid, law enforcement officers' reliance on the warrant was objectively reasonable, bringing this case within the "good-faith" rule of *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405.

We affirm the trial court's judgment.

The crucial facts of this case are not in dispute. On April 2, 1991, defendant was indicted in the case at bar on one count each of the unlawful possession of a controlled substance (cocaine) with the intent to deliver (Ill. Rev. Stat. 1991, ch. 56½, par. 1401(a)(2)(A) (now 720 ILCS 570/401(a)(2)(A) (West 1992))); unlawful possession of a controlled substance (Ill. Rev. Stat. 1991, ch. 56½, par. 1402(a)(1)(A) (now 720 ILCS 570/402(a)(2)(A) (West 1992))); unlawful use of a weapon (Ill. Rev. Stat. 1991, ch. 38, par. 24—1(a)(4) (now codified, as amended, at 720 ILCS 5/24—1(a)(4) (West 1992))); unlawful possession of a firearm without a firearm owner's identification card (Ill. Rev. Stat. 1991, ch. 38, par. 83—2 (now 430 ILCS 65/2 (West 1992))); and unlawful possession of cannabis (Ill. Rev. Stat. 1991, ch. 56½, par. 704(a) (now 720 ILCS 550/4(a) (West 1992))).

Defendant was arrested on March 22, 1991. The search of defendant's car pursuant to this arrest turned up evidence upon which the charges in this case are based. The arrest itself was based on a warrant issued by the trial court in case No. 90—CF—1891, wherein defendant was charged with the unlawful delivery of a controlled substance, a Class 1 felony (the exact charge is not clear from the record). On December 10, 1990, defendant was indicted in case No. 90—CF—1891. On December 13, 1990, defendant was arrested for this offense pursuant to a valid warrant issued that day. On December 17, 1990, defendant was duly released on bail in case No. 90—CF—1891. On December 18, 1990, the circuit court, relying on the grand jury's

finding of probable cause, issued a second warrant for defendant's arrest on the charge of unlawful delivery of a controlled substance. Defendant missed no court appearances and violated none of the conditions of his bail in case No. 90—CF—1891.

On April 11, 1991, the circuit court entered an order recalling the arrest warrant in case No. 90—CF—1891. On April 16, 1991, in the case at bar, defendant moved to quash the March 22, 1991, arrest and to suppress the fruits of the search that was made pursuant to the arrest. The sole witness at the suppression hearing was Officer Randy Podschweit of the Aurora police department. Podschweit testified that at about 11 p.m. on March 22 he spotted defendant as defendant was driving south in Aurora. Podschweit acknowledged that the only basis he had to arrest defendant was the warrant in case No. 90—CF—1891.

At the time he spotted defendant, Podschweit knew that there had been a warrant for defendant's arrest but was unsure whether the warrant was still active. About a month earlier, Podschweit had verified that there was an outstanding warrant for defendant's arrest. Since then, he had checked the department warrant list about three times. Each time, defendant was on the list of people for whom there were outstanding warrants.

Podschweit stopped defendant and told the latter there was a warrant out for defendant's arrest. Defendant denied that this was so. Podschweit called the department and received confirmation that the warrant was still valid. He arrested defendant. A search incident to the arrest uncovered a gun and a variety of controlled substances.

After Podschweit testified, the trial judge took notice of the judicial proceedings in case No. 90—CF—1981, over which he also presided. Although defendant had posted bond and had missed no court appearances, two warrants for defendant's arrest on the same charge had issued. Defendant did not receive notification of the indictment until well after the second warrant was issued. The judge opined that the second warrant should never have been issued. However, he also noted that the warrant was "still a valid warrant" at the time of the arrest and that Officer Podschweit may have relied in good faith upon the warrant.

After the arguments of counsel, the trial judge decided to grant the defendant's motion to quash the arrest and to suppress the evidence in the case at bar. The judge explained that (1) he believed that the issuance of the second warrant violated defendant's constitutional rights because the first warrant had already given the court jurisdic-

tion over the defendant on the same charge. The judge then explained why he did not believe the good-faith doctrine of *Leon* applied:

"[T]hey [the Supreme Court] talk about the reliance on a warrant which was objectively reasonable, and they talk about \*\*\* whether or not the officers were acting on a facially valid search warrant issued by a state court judge after an independent determination of probable cause.

This is not that kind of a warrant. This is a warrant based on a grand jury indictment. I don't think that makes for an independent determination of probable cause by a judge, and for that reason, I will grant the motion to quash."

The court entered a written order granting defendant's motion, and the State timely appealed.

The State argues that the trial judge erred as a matter of law in quashing the arrest and suppressing the evidence. The State asserts that the trial judge was simply mistaken in his belief that the grand jury's determination that there was probable cause to indict defendant was not an adequate substitute for a neutral magistrate's finding of probable cause.

Defendant does not argue that the trial court's reasoning in this respect was correct. However, defendant maintains that the trial court's holding may still stand. He cites this court's decision in *People v. Mourecek* (1991), 208 Ill. App. 3d 87, where we determined that *Leon* does not apply to an arrest that is based on law enforcement officers' mistaken belief that a warrant exists for a defendant's arrest, as opposed to their mistaken belief in the validity of an existing warrant.

We do not fully agree with either party or with the trial court's reasoning. However, we affirm the trial court's decision to quash the arrest and suppress the evidence. More particularly, we hold that (1) the warrant upon which the arresting officer relied was invalid; (2) the trial court erred in holding *Leon* inapplicable merely because a grand jury rather than a magistrate determined that there was probable cause to arrest defendant; (3) *Mourecek* is distinguishable and does not in itself require that we refuse to apply *Leon* to this case; and (4) although the court's specific reason for refusing to apply *Leon* was unsound, the court did not err in refusing to apply *Leon* to a repetitive and unnecessary arrest that was the result of faulty police information.

As the relevant facts are undisputed, the trial court's rulings are ones of law which we review *de novo*. (See *In re D.G.* (1991), 144 Ill. 2d 404, 408-09; *Mourecek*, 208 Ill. App. 3d at 91.) We must decide

whether the trial court's judgment was correct, and we may uphold that judgment on any proper basis, even if the trial court's reasoning was flawed. *Ruddock v. First National Bank* (1990), 201 Ill. App. 3d 907, 911.

■ We hold first that the arrest warrant on which the police relied was invalid. The State concedes, and from the limited record we conclude, that on April 11, 1991, the circuit court invalidated the warrant. Apparently, the State never appealed this ruling (see 134 Ill. 2d R. 604(a)(1)), and the State may not now maintain that the second warrant was properly issued. See *People v. Williams* (1990), 138 Ill. 2d 377, 389-90.

Moreover, what applicable law we have found supports a holding that the second warrant was invalid. No Illinois statute authorizes a court which already has jurisdiction over a defendant to issue a warrant for the defendant's arrest merely because the defendant has been indicted in the same court for the same offense. In the only reported opinion we have found upholding such a rearrest, the relevant statute specifically authorized such a procedure. (See *State v. Smith* (1970), 3 Or. App. 606, 608, 475 P.2d 433, 434.) Otherwise, courts have required that the rearrest of a person admitted to bail have a valid basis other than "the continuing knowledge of his possible guilt of the offense charged in the indictment." (*United States v. Holmes* (7th Cir. 1971), 452 F.2d 249, 261, *cert. denied* (1972), 405 U.S. 1016, 31 L. Ed. 2d 479, 92 S. Ct. 1291; accord *United States ex rel. Heikkinen v. Gordon* (8th Cir. 1951), 190 F.2d 16, 19-20, *vacated & remanded with directions to dismiss cause as moot* (1952), 344 U.S. 870, 97 L. Ed. 674, 73 S. Ct. 163; *Sherman v. State* (1907), 2 Ga. App. 686, 687, 58 S.E. 1122, 1123.) Courts have recognized that to allow repetitive arrests could encourage police harassment of the accused and undermine the defendant's right to bail. *Holmes*, 452 F.2d at 261; *State v. Black* (1890), 42 La. Ann. 838, 8 So. 594.

■ Having determined that the second arrest warrant was invalid, we must decide whether the arrest and search made pursuant to the warrant were properly subject to the exclusionary rule. We reject the trial court's reasons for refusing to apply *Leon* here. Nonetheless, we hold that *Leon* does not extend to police reliance on the type of invalid warrant here.

The trial judge reasoned that the police could not reasonably rely on an arrest warrant that a judge issued after an indictment, as opposed to an arrest warrant that is based upon the judge's own determination of probable cause. This distinction is legally erroneous. It is well settled that a properly returned indictment, fair upon its face,

conclusively settles the issue of probable cause and not only permits but requires the issuance of an arrest warrant without further inquiry. (*Gerstein v. Pugh* (1975), 420 U.S. 103, 117 n.19, 43 L. Ed. 2d 54, 67 n.19, 95 S. Ct. 854, 865 n.19, citing *Ex parte United States* (1932), 287 U.S. 241, 250, 77 L. Ed. 283, 287, 53 S. Ct. 129, 131.) Thus, the trial court erred in holding that *Leon* was inapplicable to the warrant because the warrant was based upon a grand jury's determination of probable cause.

Defendant suggests a different ground on which to affirm the trial court. He argues this case is controlled directly by *Mourecek* and similar cases where the arresting officer incorrectly believed that there was a valid warrant outstanding for the defendant's arrest. (See *Mourecek*, 208 Ill. App. 3d at 91-93; *People v. Joseph* (1984), 128 Ill. App. 3d 668; *People v. Lawson* (1983), 119 Ill. App. 3d 42; see also *People v. Sullivan* (1993), 243 Ill. App. 3d 830.) However, these cases are distinguishable. Here the police relied on an outstanding warrant that was invalidated only *after* the arrest.

In *Mourecek*, the arresting officer was erroneously informed that a warrant was outstanding for defendant's arrest. In fact, the warrant had been quashed over 30 days before the arrest. This court held that although *Leon* allowed an officer to rely in reasonable good faith on an existing warrant, the Supreme Court's ruling was of no help where the officer reasonably believed that there was a warrant which in fact no longer was legally in existence. (*Mourecek*, 208 Ill. App. 3d at 92-93.) Where a warrant has been quashed prior to the arrest (or search), there is no existing warrant. Although the police may rely on a warrant that they reasonably believe to be valid, they may not rely on a belief, however reasonable, that there *is* a warrant where no warrant exists. (*Mourecek*, 208 Ill. App. 3d at 93.) Such a distinction is implicit in *Leon*, which is premised in part on the judicial preference for searches made pursuant to warrants over warrantless searches. *Leon*, 468 U.S. at 913-14, 82 L. Ed. 2d at 692-93, 104 S. Ct. at 3415-16.

To hold that *Mourecek* applies directly here would effectively hold that good faith will not validate police reliance on an existing warrant that is *later* found to have been defective. Such a blanket holding would conflict directly with *Leon* and with our supreme court's application of *Leon*. See *People v. Stewart* (1984), 104 Ill. 2d 463, 477.

However, we agree with the trial court's ultimate determination that the *Leon* "good-faith" doctrine did not shield the arrest and search of defendant from the operation of the exclusionary rule. Thus, we uphold the trial court's judgment.

Under *Leon*, evidence seized pursuant to a technically invalid search warrant is not subject to suppression if the police reasonably relied on the warrant. The rationale for this holding is that the purpose of the exclusionary rule—to deter improper or negligent police conduct—would be served minimally or not at all by excluding evidence that the police have seized in reliance on a neutral magistrate's determination that the arrest or search is proper. In most such instances, the officers executing the warrant cannot be expected to question the magistrate's determination. *Leon*, 468 U.S. at 919-21, 82 L. Ed. 2d at 696-98, 104 S. Ct. at 3418-19.

The *Leon* Court stressed that, in applying the test it set out, a court must consider whether the actions of law enforcement officers were objectively reasonable and not whether the officers subjectively believed that their actions were proper. (*Leon*, 468 U.S. at 919 n.20, 82 L. Ed. 2d at 696 n.20, 104 S. Ct. at 3419 n.20.) Moreover, a court must consider the reasonableness "not only of the officers who eventually executed a warrant, but also of the officers who originally obtained it or who provided information material to the probable cause determination." *Leon*, 468 U.S. at 923 n.24, 82 L. Ed. 2d at 698 n.24, 104 S. Ct. at 3420 n.24.

We conclude that the *Leon* good-faith doctrine is of no help to the State in this case. Under these facts, application of the good-faith doctrine is neither compelled by the reasoning of *Leon* nor consistent with the purposes of the exclusionary rule as recognized even after *Leon*.

*Leon*'s holding is premised on the assumption that law enforcement officers ordinarily have no reason to question the determination of a neutral magistrate that there is probable cause to execute the search or arrest for which the warrant has been issued. Even in the context of a probable-cause determination, however, there are certain instances, not directly applicable here, where law enforcement officers will have no reasonable grounds for believing that the warrant was issued. *Leon*, 468 U.S. at 922-23, 82 L. Ed. 2d at 698-99, 104 S. Ct. at 3420-21.

We believe that the issuance of an invalid repetitive warrant is such an instance. The procurement and execution of a previous warrant are historical facts which law enforcement officers know or should know at the time that a second warrant is issued. These are not matters with regard to which law enforcement officers may reasonably insist on deference to a magistrate's determination, for whether a warrant is redundant is not a question of degree; it is a simple fact of which the police as an entity are or should be aware.

Thus, law enforcement officers in a case such as this one will have no reasonable grounds to believe that the warrant was proper. Even if such reasonable grounds could be envisioned in some hypothetical instance, nothing suggests that this case is such an instance.

Also, application of the exclusionary rule to this type of situation would promote the rule's central goal of deterring improper police conduct as opposed to simply "punish[ing] the errors of judges and magistrates." (*Leon*, 468 U.S. at 916, 82 L. Ed. 2d at 694, 104 S. Ct. at 3417.) As both the trial judge here and one Federal appellate court have noted, to allow multiple arrests of a defendant on the same charge in the same jurisdiction could facilitate harassment of a defendant—or "fishing expeditions" for other-crimes evidence that might be turned up in a search incident to the redundant arrest. (See *Holmes*, 452 F.2d at 261.) Moreover, as defendant observes on appeal, to allow law enforcement officials to benefit from an arrest that is concededly the result of their failure to obtain full and accurate information about a given defendant might actually encourage negligent execution of police functions.

We do not mean to imply that any such motives were present in this case, as the record does not so suggest. However, the temptations to such police misconduct are evident in a case such as this one unless the fruits of the improper arrest and search are suppressed. Therefore, we hold that the trial court properly granted defendant's motion to suppress.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

WOODWARD, J., concurs.

PRESIDING JUSTICE INGLIS, dissenting:

Because I feel that the good-faith doctrine does operate to shield the arrest and search of this defendant from the operation of the exclusionary rule, I respectfully dissent. I agree with the majority that the trial court erred in holding *United States v. Leon* (1984), 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405, inapplicable merely because the warrant issued from a grand jury rather than a magistrate. I also agree that *People v. Mourecek* (1991), 208 Ill. App. 3d 87, is distinguishable and that the subsequent warrant was ultimately invalid. It is the majority's application of *Leon*, and thus the ultimate disposition, with which I must take issue.

Writing for the Court in *Leon*, Chief Justice Burger took great pains to explain that the key to the exclusionary rule is its deterrent effect. As the majority notes, the rule is designed to deter police misconduct rather than judicial or magistral error. The majority, however, seems to punish the police for the error of the circuit court or the State's Attorney.

Burger directs "[the rule] cannot be expected, and should not be applied, to deter objectively reasonable law enforcement activity." (*Leon*, 468 U.S. at 919, 82 L. Ed. 2d at 696, 104 S. Ct. at 3418.) I cannot see that the police erred in any way. Nor do I see that the officer acted in a less than reasonable manner. The officer in this case, like the officer in *Leon*, seems to have done all he could do to determine the validity of the warrant. Suspecting the warrant might be old, the officer radioed in to ask. There was nothing more he could have done.

" '[T]he application of the [exclusionary] rule has been restricted to those areas where its remedial objectives are thought most efficaciously served.' " (*Leon*, 468 U.S. at 908, 82 L. Ed. 2d at 689, 104 S. Ct. at 3413, quoting *United States v. Calandra* (1974), 414 U.S. 338, 348, 38 L. Ed. 2d 561, 571, 94 S. Ct. 613, 670.) It does not seem to me that application of the exclusionary rule in this case will serve its remedial objectives. The officer did not request the redundant warrant; he had nothing to do with its issuance. It does not appear that the police department requested the redundant warrant or that the department could have prevented its issuance. The majority asserts that the redundancy of a warrant is "a simple fact of which the police as an entity are or should be aware." (251 Ill. App. 3d at 491.) I do not see this. How could they know?

" 'If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.' " (*Leon*, 468 U.S. at 919, 82 L. Ed. 2d at 696, 104 S. Ct. at 3419, quoting *United States v. Peltier* (1975), 422 U.S. 531, 542, 45 L. Ed. 2d 374, 384, 95 S. Ct. 2313, 2320.) The officer in this case had every reasonable ground to believe the warrant was valid and, after calling in to check, had absolutely no reason to doubt it. It does not appear that the officer here failed in his duty in any respect. I do not see how he or the department could be charged with knowledge of the redundant nature of the warrant.

The majority states in closing that we do not mean to imply misconduct but affirm the suppression because "temptations to such police misconduct are evident." (251 Ill. App. 3d at 492.) This strong language, I believe, does unkind and unmerited disservice to local law enforcement. It cannot but be interpreted as a lack of faith in the integrity of these public servants. Furthermore, I do not read the exclusionary rule to punish possible future misconduct. I simply do not agree that good faith does not apply here.

Finally, I question the restriction of the good-faith doctrine which the majority seems to suggest: that the department as well as the individual officer must have no reasonable ground to doubt the validity of the warrant. I believe this was not intended in *Leon*, and I believe the warrant system would suffer if the police were expected to doubt every warrant.

I believe the good-faith exception to the exclusionary rule applies to this case. I would therefore reverse the decision of the trial court.